No. 28,301.

THE KENT OIL COMPANY, *Appellee,* v. CLAY D. WADDILL, *Appellant.*

(274 Pac. 1113.)

Opinion filed March 9, 1929.

*J. P. Noble,* of Oberlin, for the appellant.
*W. E. Mahin,* of Norton, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff is prosecuting this action to obtain an injunction restraining the defendant from engaging in the business of selling or delivering kerosene, gasoline, lubricants or other merchandise supplied by the plaintiff or any other person in the city of Oberlin for a period of two years from the 5th day of November, 1927. A temporary restraining order was issued, and afterward a demurrer filed by the defendant to the petition of the plaintiff was overruled. From the issuance of the temporary restraining order and from the order overruling the demurrer to the petition, the defendant appeals.

1. The defendant says that it was error to issue the temporary restraining order because the petition on which it was based and which was used as evidence to obtain the restraining order was verified in the following language:

"G. P. Nissen, of lawful age, being first duly sworn, states that he is the vice president and acting manager of the Kent Oil Company, a corporation, and that he has read the above and foregoing petition and that each and every allegation, statement and averment therein contained is true, as he verily believes."

The defendant argues that the verification should have been positive and not on belief. That argument is good, but immediately upon the manner of verification being called to the attention of the court, the plaintiff asked and was given leave to amend it. The amended verification stated that the "allegations, statements and averments" contained in the petition "are true." The first verification was on December 24, 1927, and the second one on January 5, 1928.

In *Powell v. Valentine,* 106 Kan. 645, 189 Pac. 163, this court said:

"A temporary restraining order ought not to issue on a petition which is not positively verified; but when, later, it is properly verified and the restraining order has given place to a temporary injunction lawfully issued, no reversible error can be predicated on the improvident issue of the restraining order." (Syl. ¶ 4.)

The change in the verification did not mislead the defendant. None of his rights was prejudiced thereby. The statement of facts contained in the petition was the same under both verifications. When the court permitted the restraining order to stand after the last verification, he in effect reissued the restraining order and based it on the last verification. The court could have properly reissued the restraining order, and the defendant would have had no cause for complaint. The error in issuing the restraining order without the proper verification was cured when the verification was amended.

2. The defendant contends that it was error to permit the plaintiff to amend its verification. The verification was subject to amendment. (*Pierce v. Butters,* 21 Kan. 124; *Wells Fargo & Co. v. Danford,* 28 Kan. 487; *Meyer v. Lane,* 40 Kan. 491, 20 Pac. 258; *Bank v. Rooney,* 96 Kan. 133, 150 Pac. 555.) Section 60-759 of the Revised Statutes provides that the court or judge may before or after judgment in the furtherance of justice amend any pleading by correcting any mistake when the amendment does not change the claim

or defense; and whenever a proceeding fails to conform in any respect to any of the provisions of the code, the court may permit the same to be made conformable thereto by amendment. The first affidavit stated that the person signing the affidavit believed the statements in the petition to be true; in the second verification, he stated that those allegations were true. There was no error in permitting that verification to be amended.

3. Defendant argues that it was error for this court to overrule his demurrer to the petition of the plaintiff. The petition alleged that the plaintiff employed the defendant at Oberlin, Kan., to conduct its business of wholesaling and retailing gas, coal oil, and other petroleum products at that place, and that the contract of employment prescribed the manner in which the business should be done. The contract provided that—

"The said party of the second part also agrees that he will not at any time while he is in the employ of the said party of the first part, or within two years after leaving its services, for himself or any other person, persons or company, call for, solicit orders of, sell or deliver kerosene, gasoline, lubricants or other merchandise supplied by the party of the first part, or any other person, persons or corporation whatsoever at the city of Oberlin, Kan., or in the vicinity thereof, nor will he in any way, directly or indirectly, solicit, divert or take away, or attempt to solicit, divert or take away any of the custom, business or patronage of the party of the first part at Oberlin, Kan., or in the vicinity thereof within such two years.

"That he will not at any time while he is in the employ of the said party of the first part or within two years after leaving its service, for himself or for any other person, persons or company engage in the business or calling of selling kerosene, gasoline, lubricants or other merchandise like or similar to the merchandise handled by the party of the first part in the city of Oberlin, Kan., or in the vicinity thereof."

The petition then alleged that the contract of employment had been terminated; that the defendant had engaged "in the sale and delivery of kerosene, gasoline, lubricants and other products sold by the plaintiff herein in the city of Oberlin and vicinity; that he is in the employ of the Home Oil Company and Walter Sauvage, of said city of Oberlin, Kan., and that such employment is in violation of the terms of said contract to the great damage of the plaintiff, and has been in the employ of the above-named parties since about the time of his leaving the employ of the plaintiff herein, and that said employment is without the consent of the plaintiff, to the detriment of plaintiff, and in violation of said contract made with the plaintiff."

In *Pohlman v. Dawson,* 63 Kan. 471, 65 Pac. 689, this court said:

"Defendant, who was a barber and owner of a shop, sold his furniture, tools and fixtures to the plaintiffs, and agreed that he would not engage in the barber business in any manner in the town of Russell. *Held,* that a decree enjoining defendant from working as an employee of the owner of another barber shop in that town will be sustained." (Syl.)

In *Mills v. Cleveland,* 87 Kan. 549, 125 Pac. 58, the following language will be found:

"The contract involved in this case, limiting the right of a physician to practice a specialty and limiting his right to sell or disclose certain formulas used in such practice, is held to be valid.

"A physician who is a member of a firm practicing a specialty and making use of certain remedies and formulas in such practice, may on retiring sell his influence and good will to the firm or its successors, and having done so he and anyone in collusion with him may be enjoined from doing any act which prevents the vendees from enjoying the benefits of such influence and good will to the same extent as they were enjoyed before the sale." (Syl. ¶¶ 2, 3.)

In *Fox v. Barbee,* 94 Kan. 212, 146 Pac. 364, it is declared that—

"A house mover bought out two other men in the same town engaged in the same business, one of whom agreed in writing to contract no house moving for the next ten years. *Held,* that such contract, fairly construed, merely bound the seller to refrain for ten years from competing with the purchaser, and is reasonable and valid, and its violation can be enjoined." (Syl.)

The present case comes within the principle declared in the cases from which the quotations have been taken and is controlled by them.

The order granting a temporary restraining order and the order overruling the demurrer of the defendant to the petition of the plaintiff are affirmed.