No. 37,880

J. E. FOLTZ, *Appellee*, v. ERLING B. STRUXNESS, *Appellant*.

(215 P. 2d 133)

Opinion filed February 28, 1950.

*William D. P. Carey,* of Hutchinson, argued the cause, and *Donald C. Martindell, Wesley E. Brown, Edwin B. Brabets, Robert J. Gilliland, John F. Hayes, C. William Miller* and *Robert C. Martindell,* all of Hutchinson, were with him on the briefs for the appellant.

*Roy C. Davis,* of Hutchinson, argued the cause, and *Frank S. Hodge, Eugene A. White, Robert Y. Jones, Jr.,* and *H. Newlin Reynolds,* all of Hutchinson, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted to enjoin the defendant from practicing medicine and surgery by reason of alleged violation of a written contract. Plaintiff prevailed and defendant appeals.

Defendant was a young doctor from Chicago, Ill. He was well qualified by educational training but his practice experience was limited to less than one year. He was seeking a location and contacted appellee, a physician and surgeon with a well established practice in the city of Hutchinson, through a Chicago placement agency. Appellee was sixty-nine years of age and anxious to secure a good young doctor who would relieve him of some of his heavy responsibilities. After a visit and conference with appellee· at Hutchinson covering a period of a few days the following contract was executed:

"THIS AGREEMENT, Made and entered into this 29th day of December, 1947, by and between J. E. Foltz, of Hutchinson, Reno County, Kansas, party of the first part and Erling Struxness, of Chicago, Cook County, Illinois, party of the second part;

"WITNESSETH: Whereas both parties hereto are duly qualified, licensed and practicing physicians and surgeons, and whereas it is the mutual desire of said parties to enter into this agreement *upon the terms and conditions listed below,* it is now therefore agreed and covenanted by and between said parties as follows:

"The said party of the first part hereby hires and employs the said party of the second part, in the business of the said party of the first part, in the City of Hutchinson, Kansas, in the capacity of a physician and surgeon, and agrees to pay him during the time he shall remain in such employment the sum of $400.00 per month all upon the terms and conditions herein stated.

"Second party hereby covenants and agrees that he will devote his exclusive time, energy, skill and efforts as a physician and surgeon in the employ of the first party turning in any and all fees received to said first party; and further, that said second party will make all housecalls, hospital visits and will perform any and all medical services as designated for him to do by said first party.

"First party, at his sole option and provided he deems second party's services warrant such, hereby agrees to increase said second party's salary from $400.00 to $450.00 per month commencing the seventh month wherein this agreement is in effect. It is further agreed and understood that at the expiration of this Agreement, and provided that same is agreeable to both parties, the said parties hereto will enter into a partnership agreement under such terms and conditions as shall then be determined.

"It is further understood and agreed by and between the parties hereto that this Agreement may be terminated at any time by either party on giving the other one month's notice in writing; and further, *that upon termination of this agreement and failure on the part of the parties hereto to agree and enter into a partnership agreement as afore-mentioned that second party will not engage in the practice of medicine or surgery within a radius of 100 miles from Hutchinson, Reno County, Kansas, for a period of 10 years from the date of this Agreement.*

"This Agreement shall be for the term of one year from the date first above written unless otherwise terminated by mutual agreement of the parties hereto, or in the manner as set forth heretofore herein.

"WITNESS our hands the day and year first above written." (Our italics.)

After executing the contract appellant left for Chicago, and on February 1, 1948, returned to Hutchinson and started work pursuant to the executed contract. Appellee was anxious that appellant's acquaintance and active participation in the practice should progress as rapidly as possible. Accordingly he did everything in his power to further that objective. Appellant coöperated in the same spirit. He was a good young physician and his services were very satisfactory to appellee. It appears except for matters of minor consequence the relationship was pleasant and satisfactory.

The parties started in November, 1948, to discuss terms of a pro-

posed partnership agreement. In view of the terms of the previous contract it is unnecessary to detail the various suggestions of the respective parties relative to terms and provisions each of them sought to have incorporated in such agreement. Quite naturally each of them, as the court found, sought to protect his own interests as he viewed them. The trial court found each of them acted in good faith. The unfortunate but important fact, in view of the terms of the previous contract, is they did not agree upon the terms of the contemplated future agreement. They did not agree by December 29, 1948, or by February 1, 1949. By mutual agreement appellant remained on a salary basis while the parties continued their effort to reach an agreement. Failing in such effort appellant left appellee on March 2, 1949, and started his own practice in the city of Hutchinson. Appellee informed appellant by letter if he engaged in the practice in violation of the contract he would be obliged to seek legal redress to protect his interests. Appellant continued his practice. Being a competent young physician and having ingratiated himself with appellee's patients it was quite natural a substantial number of them should follow him. That occurred and appellee's practice suffered accordingly.

The trial court made findings covering, in substance, the foregoing facts and others which will be noted as required.

Appellant does not claim duress or fraud in the execution of the contract. He does contend the contract was not fairly and equitably entered into. This issue was sharply litigated. The trial court resolved the issue against appellant's contention. On appellate review this court is concerned only with evidence which supports the findings made and not with evidence contrary thereto. Notwithstanding this well-recognized rule we have studiously examined the entire record. There is ample evidence to support the finding and conclusion of the trial court on this issue and we cannot disturb it.

Appellant argues the events in this case never brought the restrictive provision of the contract into operation. The argument is based on the theory the words, ". . . upon termination of this agreement," cannot be interpreted to mean "upon *expiration* of this agreement" and that the word "termination" can apply only in the event a thirty-day notice to terminate the contract has been given. The trial court disagreed with that interpretation. It took the position the contract, considered as a whole, was intended to mean that if the contract expired or was discontinued for any reason and no

partnership agreement was entered into by the parties the restrictive provision should apply. We think the trial court was correct in concluding appellant's interpretation of the word "termination" was too narrow and that the restrictive provision did apply.

The real question in the lawsuit is the validity of the restraint imposed on appellant by virtue of the restrictive covenant. The reports are replete with cases involving similar restrictive provisions. The last time this court had occasion to consider such provisions was in *Heckard v. Park,* 164 Kan. 216, 188 P. 2d 926, 175 A. L. R. 605, 617. In that action plaintiff, a person employed as a teacher and trainer of a young musician, sought specific performance of an agreement after the young artist had violated the contract. A part of what was there said is pertinent here. We stated:

"At the outset it should be stated the authorities are consistent and. clear in the view that no hard-and-fast rule govering all cases of this character can be laid down. Abstract tests which have been suggested are not always adequate. The real question is never whether there is any restraint of trade but always whether the· restraint is reasonable in view of all the facts and circumstances and whether it is inimical to the public welfare. If it is reasonable and does not contravene public welfare the contract will be upheld. (2 Page on Contracts, § 776; Restatement, Contracts, § 514; 5 Williston oñ Contracts, Rev. Ed., § 1636.) Our own decisions are to the same effect. A few of them are: *Mills v. Cleveland,* 87 Kan. 549, 125 Pac. 58; *Kent Oil Co. v. Waddill,* 127 Kan. 704, 274 Pac. 1113; *Berkey v. Smith,* 138 Kan. 792, 796, 28 P. 2d 763; *Southwest Kan. Oil & G. Co. v. Argus P. L. Co.,* 141 Kan. 287, 39 P. 2d 906.

"The old rule as to limitations of time and space has given way to that of reasonableness. (*Fox v. Barbee,* 94 Kan. 212, 146 Pac. 364.) The question of reasonableness of a contract of this character frequently depends upon fundamental elements of common fairness in view of the facts and circumstances of the parties." (p. 223, 224.)

We shall first discuss the reasonableness doctrine and later the subject of public policy. Appellant contends the restraint in the instant case covering a one-hundred-mile radius was unreasonable and, therefore, the entire contract is invalid and no part of it is enforceable. There is no doubt the practice of some physicians and surgeons extends over territory far beyond a one-hundred-mile radius from the place of their residence. That fact requires no demonstration.

Was the one-hundred-mile radius reasonable here? We need not answer. The trial court believed, in view of the· record, appellee could be reasonably protected in his practice of medicine and surgery by reducing that territory as follows:

". . . the City of Hutchinson, Kansas, and within five miles from said City as now constituted, and in the hospitals or elsewhere in such space or territory. . . ."

In rendering this judgment the court followed authorities which adopt the doctrine that courts of equity should and will enforce restrictive covenants to a territorial extent *reasonably necessary* to afford protection to an established business or profession but no further. Among such decisions are: *Hill v. Central West Public Service Co.,* 37 F. 2d 451 (1930); *Edgecomb v. Edmonston,* 257 Mass. 12, 153 N. E. 99 (1926); *John T. Stanley Co. v. Lagomarsino,* 53 F. 2d 112, 115 (1931); *Fleckenstein Bros. Co. v. Fleckenstein* 76 N. J. Laws 613, 71 A. 265, 24 L. R. A. (n. s.) 913 (1908); *Goldstein v. Maisel,* 67 N. Y. S. 2d 410, 411 (1947); *Whiting Milk Co. v. O'Connell,* 277 Mass. 570, 179 N. E. 169 (1931); *New England Tree Expert Co. Inc. v. Russell,* 306 Mass. 504, 28 N. E. 2d 997 (1940).

Appellee has not cross-appealed and is not complaining concerning the reduction of territory. In view of the record there can be no doubt appellee's field of professional activity embraced at least the area fixed by the judgment. The reduction of the area was in appellant's favor. Such reduction, however, does not aid appellant materially as it appears he desires primarily to practice in the city of Hutchinson.

Appellant contends the territory described in the contract is a unit, indivisible, and unless the entire territory designated in the contract was reasonable the contract must fall and no relief can be granted thereunder. The old rule undoubtedly was that if the territory described was *divisible* in the form stated courts would enforce the contract as to such part thereof as was reasonably necessary for protection of an established business or profession and would refuse to enforce it as to the remainder, but if the territory as designated constituted a single *indivisible* unit, unreasonable in extent, the contract was unenforceable. Now, however, many courts have done away with this distinction and hold courts of equity have the power and will enforce restrictive provisions to the extent reasonably necessary to carry out the protective intent of the parties whether the territory, in the form described, is divisible or not. (*John T. Stanley Co. v. Lagomarsino,* supra, p. 115.) The group of cases last cited herein are among those sustaining the later doctrine.

The trial court construed the instant provision, *"within* a radius of 100 miles from Hutchinson," (our italics) to be divisible by its own terms and second, held it to be divisible on equitable principles.

Appellant emphasizes the word "from" in the provision "within a radius of 100 miles from Hutchinson." He contends literally and strictly speaking that provision does not bar appellant from the practice *within* the city of Hutchinson. That is the city in which the parties were practicing. Manifestly they intended to contract with regard to it. A contract should be read and construed in the light of the intention of the parties at the time it was entered into, if possible, without doing violence to it. (*Johnson v. Stumbo*, 277 Ky. 301, 126 S. W. 2d 165.) It has also been held contracts of this and similar character will be construed as being divisible, if possible, and therefore at least partially valid. (*John T. Stanley Co. v. Lagomarsino*, supra.)

We have no doubt the parties intended appellant should not be permitted to practice within the city of Hutchinson or anywhere else within a radius of one hundred miles from the city. Whether the beginning point of the measurement be fixed at the center, or at the outer edge, of the city obviously becomes immaterial. It would embrace this city in either case. Interpreting the contract in harmony with its intention it is possible to construe the contract as being divisible with respect to territory. (*Fleckenstein Bros. Co. v. Fleckenstein*, supra.)

In any event we regard the equitable doctrine, the second ground of the trial court's decision, entirely sound whether the territory, in the form stated, be divisible or not. Courts repeatedly have granted relief on equitable grounds to physicians, surgeons, dentists and related professions to an extent necessary to carry out the protective intent of the agreements. That has been declared to be the test of reasonableness of the restraint. Some of these cases are: *Herrington v. Hackler*, 181 Okla. 396, 74 P. 2d 388; *Granger v. Craven*, 159 Minn. 296, 199 N. W. 10, 52 A. L. R. 1356, 1362; *Andrews v. Cosgriff*, 175 Minn. 431, 221 N. W. 642; *Shaleen v. Stratte*, 188 Minn. 219, 246 N. W. 744; *Erikson v. Hawley*, 12 F. 2d 491; *Proctor v. Hansel*, 205 Ia. 542, 218 N. W. 255, 58 A. L. R. 153; *McMurray v. Faust*, 224 Ia. 50, 276 N. W. 95; *Larsen v. Burroughs*, 224 Ia. 740, 277 N. W. 463; *Johnson v. Stumbo*, 277 Ky. 301, 126 S. W. 2d 165; *Styles v. Lyon*, 87 Conn. 23, 86 A. 564; *Freudenthal v. Espey*, 45 Colo. 488, 102 Pac. 280; *Tarry v. Johnston*, 114 Neb. 496,

208 N. W. 615; *Foster v. White,* 290 N. Y. S. 394, 248 App. Div. 451; *Wilson v. Gamble et al.,* 180 Miss. 499, 177 So. 363; *Randolph v. Graham* (Tex. Civ. App.), 254 S. W. 402; see, also, anno. on same subject in 58 A. L. R. 156.

In view of our adoption of the equitable doctrine the foregoing cases are cited without regard to whether territory therein described was in form divisible or indivisible. They are all grounded on the fundamental equitable principle of upholding such contracts in harmony with plain justice and fairness and the expressed intention of the parties to protect an established business of the owner.

Many years ago (1901) a barber in this state sold his furniture, tools and fixtures to another barber and agreed not to engage in the barber business in the town of Russell. He violated the agreement and was enjoined by reason of the restrictive covenant. (*Pohlman v. Dawson,* 63 Kan. 471, 65 Pac. 689.) This court in language quite pertinent said:

"Like the surgeon or dentist, when the barber moves he attracts to himself those having confidence in his ability, and the greater his professional skill the more difficult it is to alienate from him those to whom his services have given satisfaction." (p. 473.)

So here the whole purpose and intent of the restrictive covenant was to protect encroachment on a professional business appellee had devoted most of his life to building. Appellee said, "I certainly expected him to leave town because I wanted to protect my, reasonable protection for my own interests, because I turned over everything I had in God's world to the man, and I never kept him from taking any business."

We shall not extend this opinion unduly by quotations from the various cited cases. They contain a complete answer to every contention made by appellant. Many of them denounce the violation of contracts of this character in unusually robust language.

The subject of public policy, as applicable to cases of this precise character, is fully discussed in many of the cases heretofore cited and what is said there need not be repeated here. The instant contract is not violative of any positive statute or well-established rule of law. It is the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose. It also has been said, and we think rightly, the paramount public policy is that freedom to contract is

not to be interfered with lightly. (12 Am. Jur., Contracts, § 172, p. 670.)

The trial court found:

"That since the close of World War Two the city of Hutchinson has not lost the services of any doctors by death or retirement and since that time ten additional doctors have commenced the practice of medicine and surgery in that city, and that the city of Hutchinson is no more in need of further doctors and surgeons than many other communities of like and similar circumstances in the State of Kansas."

and concluded:

". . . and that no public policy or public interest is involved under the facts and circumstances of this case sufficient to avoid or render unenforceable any reasonable restraint upon the practice of medicine and surgery by the defendant."

In the Wilson case, *supra,* it was held:

"Contract of assistant physician not to engage in practice of his profession in city or within five miles of corporate limits thereof within five years from date of termination of contract with principal was valid, where the number of physicians in city was amply sufficient for rendition of necessary medical services to citizens thereof and of its vicinity." (Syl. ¶ 2.)

Other cases, among those previously cited, are to the same effect. There is no attempt at monopoly here. Every other physician and surgeon is at liberty to practice within the territory involved. We can find no reasonable basis for disturbing the trial court's finding and conclusion on the ground of public policy.

One other subject requires attention. Appellant concedes the trial court found appellee attempted in good faith to negotiate a partnership agreement. He contends, however, there is no evidence to support the finding. Among other things appellant places particular emphasis on the contention one of appellee's proposals showed he did not want a partnership but an employment contract. On the other hand appellee stresses proposals made by appellant which appellee regarded as unreasonable.

The evidence touching the lengthy negotiations looking to the formation of a partnership has been diligently scrutinized. It has been examined not only with respect to particular points stressed but generally. We shall not attempt to narrate the different terms of the various proposals, oral and written, which formed all the negotiations. There is evidence which tends to support appellant's contention a "rough draft" proposal by appellee contained elements of an employment rather than a partnership agreement. But on the

entire record we cannot say, as a matter of law, appellee did not in good faith attempt to negotiate a partnership agreement. Irrespective of the many negotiations prior to appellant's leaving appellee on March 2, 1949, there is evidence to support the trial court's finding appellee attempted in good faith to negotiate a partnership agreement. There is evidence that even at that late date appellee had not closed the door to further negotiations but on the contrary was anxious to reach the contemplated agreement. At that time appellee requested that appellant remain for another month and offered to increase his salary to $600 for that month. Appellant testified that when he was ready to leave appellee said to him, "Don't be so hasty; if you want, I will pay you $600 for the month of March, and it will give further time for negotiations."

Whether this overture if accepted would have been fruitful we, of course, cannot now determine. The contract provided:

". . . that upon termination of this agreement and failure on the part of the parties hereto to agree and enter into a partnership agreement as aforementioned that second party will not engage in the practice of medicine or surgery. . . ."

They did not agree. The judgment of the trial court is affirmed.