PERRYTON WHOLESALE, INC., a corporation, Appellant,

v.

PIONEER DISTRIBUTING COMPANY OF KANSAS, Inc., a corporation, Appellee.

No. 7975.

United States Court of Appeals Tenth Circuit.

Nov. 9, 1965.

---

Wayne Coulson, Wichita, Kan., (Jack M. Allen, Perryton, Tex., Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk and Gerrit H. Wormhoudt, Wichita, Kan., on the brief), for appellant.

Malcolm Miller and Gerald Sawatzky, Wichita, Kan., (George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger, Benjamin C. Langel, Wichita, Kan., and Phillip S. Frick, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The trial court awarded injunctive relief and damages to appellee-plaintiff Pioneer Distributing Company of Kansas, Inc., (Pioneer) under the Sherman and Clayton antitrust acts.[1] Appellant-defendant Perryton Wholesale, Inc., (Perryton) has appealed.

Pioneer and Perryton are each in the business known in the trade as that of a rack jobber. A rack jobber is one who sells non-food items, such as cosmetics, beauty aids, drugs, phonograph records, toys, soft goods, household utensils, and like products, to grocery stores and other retail merchandisers. Rack jobbers are distinguished from other merchandisers by their method of operation. A rack jobber furnishes a retailer with the racks on which the merchandise is displayed, visits the outlet frequently to stock the racks, accepts merchandise which has not been sold in a reasonable time for credit, and possesses some skill or knowledge in the placing of items on the racks at favorable times in given areas. The route salesmen for a rack jobber solicit new accounts and service existing accounts by taking orders once or twice a week. The orders are sent to a central warehouse from which deliveries are made to the retailers. The training of route salesmen is important to the success of a rack jobber.

Over a period of years Pioneer had built up its business in an area including parts of several states and had become the predominant rack jobber in Western Kansas and Southeastern Colorado. Perryton entered the rack jobbing field in 1960. Before February, 1961, Perryton did not operate in the same area as did Pioneer except for Liberal, Kansas.

In May, 1960, Austin, a long-time and trusted employee of Pioneer who had full knowledge of Pioneer's operations, routes and customers, left Pioneer to become sales manager for Perryton. Before and after leaving Pioneer Austin tried to persuade other Pioneer employees to leave that company and to come over to Perryton bringing with them as much of the Pioneer business as was possible. Lehr, a supervisor for Pioneer in Western Kansas and Colorado with 10 salesmen under him, was a close friend of Austin, and before Austin's departure from Pioneer the two discussed the shift from Pioneer to Perryton. In February, 1961, Hink, an experienced route salesman under Lehr, quit Pioneer on a Saturday and began work for Perryton on the following Monday, calling on the same customers in the same territory which he had serviced for Pioneer. The activities of Hink resulted in the loss of many accounts by Pioneer. Lehr knew, but did not inform Pioneer, of the activities of Hink. Two other salesmen, Ryan and Davidson, left Pioneer for Perryton. Before leaving Pioneer Davidson told his customers that he was terminating and asked them to change their accounts to his new employer. As a salesman for Perryton, Davidson serviced his former Pioneer accounts.

On June 3, 1961, Lehr told Pioneer he was taking a two-week vacation. During that period he visited one of the important Pioneer accounts with the express purpose of switching it to Perryton. He did not return to Pioneer but

---

1. 15 U.S.C. §§ 1, 15, and 26.

entered the employment of Perryton. The trial court found that Lehr intended to take every account from Pioneer that he could. Three other employees of Pioneer, Little, Barnes, and Keeler, who were aware of the activities of Lehr and were expected by Lehr to participate therein, remained in the employment of Pioneer.

Pioneer's claim for injunctive relief was heard by Judge Hill who made findings of fact and conclusions of law and entered a permanent injunction against Perryton on the ground that Perryton was guilty of a conspiracy and combination in restraint of trade in violation of 15 U.S.C. § 1 and, accordingly, Pioneer was entitled to injunctive relief under 15 U.S.C. § 26. Judge Brown heard the claim for damages. He adopted the findings and conclusions of Judge Hill, and gave judgment for Pioneer in the amount of $97,826. This appeal is from both the judgment granting injunctive relief and the judgment awarding damages.

■ Perryton attacks the sufficiency of the evidence. It first says that no wrong occurs when one solicits his competitor's at-will employees to come and work for him. This brings up the ancillary question of the contracts which Pioneer had with its employees. These contained restrictive covenants whereby the employees agreed not to enter the rack jobbing business for a period of one year after termination of employment in competition with Pioneer in named states. Contracts of this type have the approval of the Kansas courts.[2] Perryton's reliance on McCluer v. Super Maid Cook-Ware Corp., 10 Cir., 62 F.2d 426, a case arising in Kansas, is misplaced. That case is distinguishable on the facts, does not cite any Kansas cases, and was decided before Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, which requires federal courts to apply state law in such circumstances.

■ We fail to see the pertinence of the argument based on the salesmen's contracts. These contracts were not for a definite term. The salesmen were free to terminate, subject to the restrictive provisions. We are not concerned with breach of contract. The questions are whether Perryton conspired to solicit and use Pioneer's employees to acquire for Perryton the business of Pioneer in Western Kansas and Colorado and whether such conspiracy, if established, violated the federal antitrust laws.

■ In Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 259, 38 S.Ct. 65, 75, 62 L.Ed. 260, the Supreme Court said in substance that to persuade a "rival's clerks to desert him under circumstances rendering it difficult or embarrassing for him to fill their places" was unfair competition. By its conspiratorial conduct Perryton successfully induced several trained and trusted employees of Pioneer to change sides in the competitive battle and to bring with them Pioneer's customers, routes, and business methods. As a result Pioneer lost business and was subjected to the troublesome burden of both shifting and training personnel to take the places of the deserters in an effort to maintain a competitive position. The record sustains the trial court's findings of conspiracy. The purpose and methods of the conspiracy exceed the bounds of fair competition.

■ Perryton urges that unfair competition does not suffice to establish a violation of § 1 of the Sherman Act. A breach of the conventional standards of fairness and morality is not enough standing alone. The statute applies when there is a conspiracy to impose an unreasonable restraint on interstate trade and commerce. This occurs when a conspiracy exists to suppress competition in interstate trade through the elimination of a competitor by unfair means. Perryton relies on Ace Beer Distributors, Inc. v. Kohn, Inc., 6 Cir., 318 F.2d

2. See Kent Oil Co. v. Waddill, 127 Kan. 704, 274 P. 1113, and Foltz v. Struxness, 168 Kan. 714, 215 P.2d 133.

283, certiorari denied 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166. In that case the object of the conspiracy was the termination of plaintiff's distributorship and, as an incident thereto, the proselyting of plaintiff's employees. The court pointed out that the substitution of one distributor for another "does not eliminate or materially diminish the existing competition" and was not an unreasonable restraint of trade. In Feddersen Motors, Inc. v. Ward, 10 Cir., 180 F.2d 519, and Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236, we held that a conspiracy to terminate a distributorship is not an antitrust violation. In our opinion the distributorship cases are not applicable here. The success of the conspiracy in those cases resulted in the substitution of one distributor for another. This changed the identity of a competitor but did not eliminate competition. In the case at bar the intent of the conspiracy was to eliminate the competitor predominant in the area by the subversion of its employees. Such elimination destroys rather than maintains competition, is an unreasonable restraint on trade, and violates the statute. See Albert Pick-Barth Co., Inc. v. Mitchell Woodbury Corp., 1 Cir., 57 F.2d 96, certiorari denied 286 U.S. 552, 52 S.Ct. 503, 76 L.Ed. 1288, and Atlantic Heel Co., Inc. v. Allied Heel Co., Inc., 1 Cir., 284 F.2d 879.

■ Perryton urges that the impact on interstate commerce is not substantial enough to invoke the application of the federal antitrust laws. The court found a total loss of profits because of the conspiracy in the amount of $13,140.-96, of which $1,938.31 arose from Colorado operations. Damages because of loss of fixtures and merchandise was fixed at $4,146.21, of which $652 occurred in Colorado. Pioneer was a Kansas based firm distributing out of a Wichita warehouse in which the goods came to rest. The argument is that the only effect on interstate commerce is that reflected by the business done in Colorado.

In United States v. Yellow Cab Co., 332 U.S. 218, 225, 67 S.Ct. 1560, 91 L.Ed. 2010, and in Apex Hosiery Co. v. Leader, 310 U.S. 469, 485, 60 S.Ct. 982, 84 L.Ed. 1311, the Supreme Court said a § 1 Sherman Act violation is determined by the nature of the restraint and not by the amount of commerce affected. In Union Carbide and Carbon Corporation v. Nisley, 10 Cir., 300 F.2d 561, 585, certiorari dismissed sub nom. Wade v. Union Carbide and Carbon Corporation, 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46, we said that § 1 condemns unreasonable restraint "irrespective of the amount of trade or commerce involved." As we have shown the restraint is unreasonable. That vice is not removed by the low dollar amount of the damages resulting from loss of interstate trade.

■■ On the injunction issue Perryton urges that the individuals participating in the conspiracy were indispensable parties. The injunction restrained Perryton from engaging in the activities which constituted the conspiracy for a period of five years in a defined geographical area. The conduct of individuals is restrained only to the extent that they are employees of Perryton. In a suit to enjoin a conspiracy a plaintiff need not join all the conspirators as parties defendant.[3]

■ No appeal was taken from the judgment granting a permanent injunction. In pre-trial proceedings on the issue of damages the court ruled that the findings of fact and conclusions of law on the injunction issue were binding on the damages issue. Perryton urges that it was entitled to a jury trial on the issue of liability for damages under the Sherman Act.

The situation is that Perryton filed a timely demand for jury trial before the hearing on the injunction. When that hearing began counsel for Perryton

---

3. State of Georgia v. Pennsylvania Railroad Co., 324 U.S. 439, 463, 65 S.Ct. 716, 89 L.Ed. 1051.

agreed that the cause should proceed to hearing before the court on all issues except damages and that they desired a jury trial on damages. A pretrial order entered prior to the trial on damages says that the "[d]efendant [Perryton] withdraws its demand for a jury." [4]

We are not faced with the problem of a right to jury trial which arises when there is a blending of legal and equitable claims.[5] Perryton assented both to the trial of the injunction and the trial of damages by the court without a jury.[6] The decision of the injunction claim finally determined all issues common both to it and the claim for damages.[7] It is unimportant whether this operates by way of res judicata or collateral estoppel.[8] The important consideration is that the question of a violation of § 1 was tried and determined. Perryton was not entitled to a retrial of this issue before another judge.

■■■ Perryton objects to the award of damages because of the loss of Kansas sales and says that the award should be confined to Colorado losses because only the Colorado business was interstate in character. The Clayton Act[9] provides that a person injured by anything forbidden by the antitrust laws "shall recover threefold the damages by him sustained." We read this to mean that when an antitrust violation is established, all damages, both local and interstate, arising from the violation are recoverable. The contrary arguments advanced and authorities cited go to the question of whether the violation exists. We have held that the conduct of Perryton violates § 1.

■■■ Perryton makes a shotgun attack on the award of damages, claiming deficiencies in proof and use of improper elements. The court found actual damages in the amount of $28,442.07 for loss of profits, extraordinary direct expenses, and deprivation of fixtures and merchandise. This was trebled under § 15 to make an award of $85,326.21 to which was added attorneys' fees in the amount of $12,500. A detailed analysis of the many items would be fruitless. We believe that the trial court correctly applied the principles which we have stated in Union Carbide and Carbon Corp. v. Nisley, 10 Cir., 300 F.2d 561, certiorari dismissed sub nom. Wade v. Union Carbide and Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46, and in Atlas Building Products Co. v. Diamond Block & Gravel Co., 10 Cir., 269 F.2d 950, certiorari denied 363 U.S. 843, 80 S.Ct. 1608, 4 L.Ed.2d 1727. The amount awarded was well within the proof.

The Clayton Act, 15 U.S.C. § 15, permits recovery of a "reasonable attorney's fee." Perryton says that the award of $12,500 for attorneys' fees improperly included compensation for obtaining injunctive relief under § 1. The point is

---

4. The pertinent provision of the order reads: "Defendant withdraws its demand for jury, asserting it is prejudiced by being forced to trial on claims for damages on both Counts I and III." Count I asks treble damages under 15 U.S.C. § 15; Count II asks injunctive relief under 15 U.S.C. § 26; Count III is based on common law unfair competition and asks both damages and an injunction. Damages were granted under § 15 and an injunction under § 26. Perryton fails to show how it was damaged by the consideration, if any, given common law unfair competition.

5. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44, and Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988.

6. In AMF Tuboscope, Inc. v. Cunningham, 10 Cir., 352 F.2d 150, we said that "the right of trial by jury in the Federal courts cannot be dispensed with, except by the assent of the parties entitled to it and cannot be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief." See also Chappell & Co., Inc. v. Palermo Cafe Co., Inc., 1 Cir., 249 F.2d 77, 81.

7. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472, 82 S.Ct. 894, 8 L.Ed.2d 44.

8. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed. 2d 988.

9. 15 U.S.C. § 15.

without merit. The injunction hearing established the § 1 violation which brought into operation the treble damages provisions of § 15. The award is within the figure stated by the only witness who testified on the point. The court did not abuse its discretion in making the award.[10]

 Perryton asserted by way of counterclaim that Pioneer's contracts with its dealers violated the antitrust laws; that Perryton has been damaged thereby; and that Perryton may off-set the amount of such damage against Pioneer's damage claims. Two types of contracts are presented. One is a fixture lease agreement which does not prohibit the retailer from dealing in the same or similar goods so long as he does not use for that purpose the fixture supplied by Pioneer. Such contracts are permissible under Federal Trade Commission v. Sinclair Refining Co., 261 U.S. 463, 474, 43 S.Ct. 450, 67 L.Ed. 746, and Standard Oil Co. of Cal. and Standard Stations v. United States, 337 U.S. 293, 303, 69 S.Ct. 1051, 93 L.Ed. 1371. Before adopting this type of contract Pioneer used for an undisclosed time with an undisclosed number of dealers a contract applicable only to drugs and cosmetics which provided that the retailer would "display and merchandise" the covered items at "recommended retail prices" and would not handle competitive items.

Section 3 of the Clayton Act[11] forbids exclusive dealing contracts where the effect thereof is "to substantially lessen competition or tend to create a monopoly in any line of commerce." This requires proof that competition has been foreclosed in a substantial share of the line of commerce affected.[12] The record shows that Pioneer supplied about 5% of the total volume of the items which it handled in the pertinent areas,

an unsubstantial amount. Perryton's insistence that a rack jobber sells service rather than commodities is not persuasive. The services performed are but incidental to the sale of the merchandise. The trial court properly rejected the counterclaim.

We do not resolve at this time the question of the right of Pioneer to an allowance for attorneys' fees in connection with this appeal. We will determine this issue upon the filing of a motion for such an allowance and the response thereto.

Affirmed.

---

10. See Twentieth Century Fox Film Corp. v. Goldwyn, 9 Cir., 328 F.2d 190, 221, certiorari denied 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87.

11. 15 U.S.C. § 14.

12. Standard Oil Co. of Cal. and Standard Stations v. United States, 337 U.S. 293, 314, 69 S.Ct. 1051, 93 L.Ed. 1371.