**ERIE TECHNOLOGICAL PRODUCTS, INC., Plaintiff,**

v.

**CENTRE ENGINEERING, INC., et al., Defendants.**

**Civ. No. 70–642.**

United States District Court, M. D. Pennsylvania.

May 5, 1971.

As Amended July 7, 1971.

MacDonald, Illig, Jones & Britton, Erie, Pa., for plaintiff.

McNees, Wallace & Nurick, Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

Plaintiff seeks a preliminary injunction to prevent the defendants ·from inducing plaintiff's employees to leave plaintiff's employment and from inducing plaintiff's employees to disclose trade secrets or confidential information. Evidence adduced at five days of hearings on the preliminary injunction has covered the broader claims for relief set forth in plaintiff's complaint. That complaint alleges a conspiracy, in violation of the Sherman Anti-trust Act, to eliminate plaintiff from competition by wrongful enticement of plaintiff's employees from employment and by misap-

propriation of trade secrets. The complaint also alleges common law claims for trade secret violation and misappropriation of confidential information, and wrongful inducement of plaintiff's employees to leave their employment with plaintiff.

■ Prerequisite to the grant of a preliminary injunction, the plaintiff must show (1) that it will be irreparably injured pendente lite if the preliminary injunction is not granted and (2) that there is a reasonable probability of eventual success in the litgation. A. L. K. Corp. v. Columbia Pictures, 440 F.2d 761 (3rd Cir.1971)

1. *Irreparable and Immediate Harm.* The essence of plaintiff's claim is that the defendants threatened to entice away plaintiff's key employees, that such threat is immediate, and that the damage to be incurred from realization of that threat is irreparable. The evidence showing the claimed threat consists in (1) the departure of five people other than the defendants from Erie's employment between February and October, 1970, and (2) two discussions about possible employment, the first between defendant Zuravleff and Erie's West Coast salesman Robert Jones; the second between defendant McCrea and an Erie production supervisor, Charles Rallis. It is argued that these facts show the pattern of enticing away key employees. The court has heard testimony of all the five employees; counsel have explored the circumstances under which these five employees left Erie and also the conversations between defendants McCrea and Zuravleff and other Erie management personnel.

Each of those five employees (Hill, Kolbe, Port, Lingle and Schindler) gave reasons for leaving Erie. In each instance, the stated reasons related to personal dissatisfaction with his job and a preference for working under the supervision of those individual defendants who left Erie to form Centre. Some of the circumstances are most suspicious and evidence an intent to cover a prior plan of employment.

The Court notes the relative size of plaintiff and defendant companies: Erie currently employs 600 persons at its State College operations and produces more than 5 million dollars in gross sales out of its State College capacitor operations. Centre now employs 60 people and projects gross sales of $200,000 for the current year. The loss of several managerial people (Kolbe and Hill), one foreman (Schindler), a draftsman-equipment repairman (Port) and a secretary (Lingle) does not convince me that there is presently a danger of immediate and irreparable harm or a present pattern of wrongful enticement of key employees. In the six months preceding the hearing, only one employee (Schindler) directly left Erie to go to Centre.

2. *Probability of Success.* The second area of inquiry on a request for preliminary injunction is to determine whether plaintiff has shown a reasonable probability of success on the merits of its action. Plaintiff has set forth three distinct theories for ultimate relief against defendants:

2.1. Improper use of "Proprietary information" constituting trade secrets belonging to plaintiff;

2.2. Violation of the Sherman Act, Section 1, in conspiring to eliminate plaintiff as a competitor by enticing and hiring away valued employees of plaintiff; and

2.3 Tortious interference with plaintiff's employment contracts with employees. These claims are discussed below.

2.1. *Trade Secrets.* Much technical information has been submitted to the Court and the parties have made many claims as to confidential information and trade secrets. At this stage in the proceedings, the Court will make only a few and limited rulings with respect to these claims. Some part of the process

by which Erie casts ceramic slurry into thin ceramic film has been admitted by defendants' witnesses to be a trade secret or proprietary information. The process, known as P-8000, is known to defendants and they claim they are not using it. A similar trade secret claim has been made by plaintiff, and acknowledged by defendants' witnesses, as to parts of the process of placing a finished coat on the Erie product. This process is known as "jetseal". Again, the defendants know the process and claim they are not using it in the operations of Centre Engineering, Inc. Aside from these two limited areas, the plaintiff claims, and defendants deny, that there are many formulae, steps in the process, equipment specifications and operating procedures used by plaintiff, and known to defendants, which are entitled to protection as trade secrets.

The controlling consideration in ruling on these trade secret claims is that on the present record plaintiff has no evidence that its trade secrets are in fact being used by defendants. This is not sufficient to support any injunctive relief:

> "A trade secret will not be protected by the extraordinary remedy of injunction on mere suspicion or apprehension of injury. There must be a substantial threat of impending injury before an injunction will issue." Allis-Chalmers Mfg. Co. v. Continental Aviation & Engineering Corp., 255 F. Supp. 645, 654 (E.D.Mich.1966).

Plaintiff's motion for temporary injunction does not request specific relief against appropriation of trade secrets; however, to the extent that temporary relief is sought to prevent defendants from enticing employees for the purpose of soliciting trade secret information, the plaintiff has failed to produce sufficient evidence to support such injunctive relief.

2.2. *Merits of the Antitrust Claim.* The trade secret claims, reviewed above, arise under state law and are enforceable by action in state court. See Vogue Instrument Corp. v. Lem Instruments Corp., 40 F.R.D. 497 (S.D.N.Y.1966). Jurisdiction in this court is based upon defendants' alleged violations of the Sherman Antitrust Act, subject to enforcement by a private action under Section 16 of the Clayton Act, 15 U.S.C.A. § 26. Defendants have moved for partial summary judgment and to dismiss the complaint on the theory that no federal claim can be proved in this case and that the remaining claims raise issues cognizable in state court.

The essence of plaintiff's claim under the Sherman and Clayton Acts is in defendants' alleged conspiracy to restrain trade by eliminating plaintiff from competition by the unfair means of enticing away plaintiff's key employees and inducing such employees to reveal trade secrets. Several cases support the proposition that the Sherman Act is violated when a competitor conspires with plaintiff's employees to destroy plaintiff and subverts their loyalty to plaintiff by enticement away of plaintiff's key employees, among other acts. See Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kansas, Inc., 353 F.2d 618 (10th Cir.1965); Atlantic Heel Co., Inc. v. Allied Heel Co., Inc., 284 F.2d 879 (1st Cir.1960); Albert Pick-Barth Co., Inc. v. Mitchell Woodbury Corp., 57 F.2d 96 (1st Cir.1932); but, cf. Vogue Instrument Corp. v. Lem Instruments Corp., 40 F.R.D. 497 (S.D.N.Y.1966).

I am not convinced at this point in the case that it is probable that defendants conspired to eliminate plaintiff from competition by unfair means, although I most certainly do not foreclose such a finding at a later stage in these proceedings. Defendants' conduct is consistent with their expressed testimony that in leaving plaintiff's employment and forming a competitive company they acted to advance their own economic interests. The case of Metal Lubricants Co. v. Engineered Lubricants Co., 284 F.Supp. 483 (E.D.Mo.1968), aff'd. 411 F.2d 426

(8th Cir.1969) furnishes an interesting parallel. The appellate court there responded to a claim that defendants had conspired to eliminate plaintiff from competition by unfair means in the following language:

> "It is true the mass exodus of the employees casts suspicions that [individual defendants] may have conspired with the others to ruin the competitive position of plaintiff company. * * * However, noteworthy in appraising the present evidence is the total absence of (1) soliciting of plaintiff's customers to switch allegiance to the new company while the defendants were still in the employ of plaintiff, (2) wrongfully disparaging plaintiff or plaintiff's products and (3) hiring of employees to obtain confidential information or trade secrets." 411 F.2d at 431.

Whether any or all of the three factors just mentioned can be proven in this case remains to be seen.

■ 2.3. *Interference with Plaintiff's Employment Contracts.* In evaluating the defendants' conduct, the Court notes that defendants were employed at will, they were not subject to a fixed term of employment or to restrictive covenants not to compete following employment. As a general legal principle, after the termination of his employment, in the absence of a restrictive agreement, the employee can properly compete with his former employer as to matters for which he had been employed. See Restatement, Agency 2d, § 393 Comment e.

> "Even before the termination of the agency, he is entitled to make arrangements to compete * * *. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete * *" *Ibid.*

The defendants' conduct may fall within the standards set forth in the Restatement of Agency, above.

In evaluating the defendants' conduct the Court is guided by the opinions in United Aircraft Corp. v. Boreen, 284 F. Supp. 428 (E.D.Pa.1968), aff'd, 413 F.2d 694 (3rd Cir.1969). In *Boreen*, the plaintiff employer was engaged in the manufacture of highly sophisticated solid state electronic devices. Boreen, who was head of operations of the division producing these devices, became dissatisfied and resigned. Several days later he initially contacted various key personnel of his former employer about the possibility of forming a company to manufacture and sell solid state devices. After many contacts, conferences and negotiations, the other individual defendants resigned and formed a competing corporation. These individuals constituted a significant part of plaintiff's management body and served in similar capacities for the new corporation. The Court held that defendants' conduct in planning to form the competing corporation while still employed and in making such plan secretly, in resigning to form the new company, and in hiring away other employees employed at will, were all lawful actions under the applicable Pennsylvania authorities.

The present case is close to the Boreen case. There is at this point no solid evidence of any failure to discharge any fiduciary duty by any of the individual defendants so long as they were employed by plaintiff, nor is there solid evidence of any effort by the individual defendants to solicit or divert any customers while still employed by plaintiff.

> "If such a right is to be in any way meaningful for an employee not under contract for a definite term, it must be exercisable without the necessity of revealing the plans to the employer." 284 F.Supp. at 444.

The present case is close to the *Boreen* case. There is at this point no solid evidence of any failure to discharge fiduciary duty so long as employed by plaintiff, nor is there solid evidence of any effort by the individual defendants

to solicit or divert any customers while still employed by plaintiff. These points may be developed later. Plaintiff has merely shown that its employees made plans to form a competing business, terminated their employment and carried out their plans. Such actions may be permissible under the controlling principles of law as discussed above. On the present state of the record, I am not convinced that there was a conspiracy on the part of defendants to reduce competition by eleminating plaintiff through unfair means. I am not convinced that plaintiff will probably succeed on the merits of its antitrust claim, although it may well do so.

■ For the foregoing reasons, the Court will decline to grant a preliminary injunction requested by plaintiff.

The further question raised in defendants' motion for partial summary judgment and to dismiss the complaint is whether on the present record the Court can determine finally that plaintiff has not and cannot prove a cause of action under the Sherman-Clayton Acts. In lieu of evidentiary affidavits, the defendants have asked this Court to consider the evidence adduced at the hearing on plaintiff's motion for Preliminary Injunction. The plaintiff has filed an affidavit under Rule 56(f) stating that it has not had time fully to develop the evidentiary matters.

■ This Court is convinced that a Motion for Summary Judgment is premature at this time. Neither party has had an opportunity to commence or complete the extensive discovery that will undoubtedly be involved in this litigation. We believe the reasons stated in the affidavit filed under Rule 56(f) are adequate and hence will not entertain the Motion for Summary Judgment at this time.

■ The jurisdiction of this Court depends on the applicability of the antitrust laws to the factual situation pleaded. The cases relied on by the plaintiff

(Albert Pick-Barth Co., Inc. v. Mitchell Woodbury Corp., 57 F.2d 96 (1st Cir. 1932), Atlantic Heel Co., Inc. v. Allied Heel Co., Inc., 284 F.2d 879 (1st Cir. 1960), and Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kansas, Inc., 353 F.2d 618 (10th Cir.1965)) hold that if the defendants intended to eliminate the plaintiff as a competitor in the relevant market, then there has been a violation of the antitrust laws and this Court would have jurisdiction. The evidence in the present record as to the actual intent of the defendants is conflicting and thus a summary judgment would be inappropriate at this time.

The defendants also assert that even if the allegations of plaintiff's complaint are taken as true, no anti-trust violation has occurred. In essence, they have asked this Court to ignore the holdings of the *Albert Pick-Barth, Atlantic Heel,* and *Perryton* cases, *supra.*

This Court is not prepared, at least on this record, to do so. We agree with the United States District Court for the Southern District of New York that the fact that the Courts of Appeal have ruled as they have "is persuasive reason for postponing a decision on the merits until it can be fashioned from the full and concrete detail of a trial record." Vogue Instrument Corp. v. Lem Instruments Corp., 40 F.R.D. 497, 500 (S.D.N.Y.1966).

The Motion for Summary Judgment will be denied.

This Opinion shall constitute the Court's findings of fact and conclusions of law. Rule 52 Fed.R. Civ.P.

### ORDER

In accordance with the Opinion filed this day, it is ordered that defendants' Motion for Summary Judgment be and the same is hereby denied.

It is further ordered that Plaintiff's motion for a preliminary injunction be and the same is hereby denied.