**Hyman MARDER and Joshua Marder t/a Marder Associates**

v.

**CONWED CORPORATION.**

**Civ. A. No. 73–2810.**

United States District Court, E. D. Pennsylvania.

July 17, 1974.

---

**6.** *See also* the cases cited in *Ruderer* at 180 including West v. Garrett, *supra*, and Pagano v. Martin, *supra*.

John T. Clary, Philadelphia, Pa., for plaintiffs.

Frederick L. Fuges, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiffs, Hyman and Joshua Marder, father and son, are manufacturers' representatives. Conwed Corporation is a manufacturer of space dividers. The complaint alleges that in January 1969 plaintiffs were appointed Conwed's representatives in a certain territory along a portion of the eastern seaboard. After a time, one Bernard Vail became a partner with plaintiffs. Vail's role was to concentrate on governmental accounts. The Marder-Vail partnership procured a contract between the General Services Administration of the United States Government and General Office Furniture Wholesalers, Inc., which contract provided for the use of Conwed's mobile space dividers. Marder-Vail was to be paid a commission on all sales by Conwed to General Office Furniture Wholesalers, Inc. under that contract. In December 1971 the Marders and Vail separated, Vail agreeing that the Marders would keep all business obtained prior to the dissolution. In late December 1971 the Marders were advised by Conwed that as of January 23, 1972 they would no longer represent Conwed and that no commissions would be paid on orders booked after that date. The Marders were further advised by Conwed that they would be permitted to continue to represent Conwed after that date on commercial lines only, and only upon condition that the Marders release Conwed from its existing obligations to pay commissions on the government contracts. Marders charge that prior to Vail's departure from the partnership, he and Conwed conspired to cause the dissolution of the partnership, and thereafter Vail would represent Conwed and receive the commissions due under the government contracts.

The complaint is in three counts. The first two counts are for breach of contract, with jurisdiction based on diversity of citizenship and the requisite amount. Those counts are not here disputed. The third count charges that Vail and Conwed conspired to eliminate the Marders as a competitor, causing an unreasonable interference with interstate commerce in violation of the antitrust laws. Conwed has moved to dismiss the third count for failure to state a claim under the antitrust laws. The motion will be granted.

At most, the third count of the complaint charges a conspiracy between a manufacturer (Conwed) and one representative (Vail) to substitute Vail for the existing representative (Marders). In my view, this case is indistinguishable from the distributorship cases such as Ark Dental Supply Co. v. Cavitron, 323 F.Supp. 1145 (E.D.Pa.1971), aff'd per curiam, 461 F.2d 1093 (3d Cir. 1972); Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755, reh. denied, 397 U.S. 1003, 90 S.Ct. 1113, 25 L.Ed.2d 415 (1970); Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir.), cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963). These cases establish "that a single manufacturer or seller can ordinarily stop doing business with A and transfer his business to B and that such a transfer is

valid even though B may have solicited the transfer and even though the seller and B may have agreed prior to the seller's termination of A." *Ark Dental, supra*, 461 F.2d at 1094. The reason that a manufacturer's decision to replace his distributor or representative is not violative of the antitrust laws was explained by the court in *Ace Beer:*

"A refusal to deal becomes illegal under the Act only when it produces an unreasonable restraint of trade, such as price fixing, elimination of competition or the creation of a monopoly. The fact that a refusal to deal with a particular buyer without more, may have an adverse effect upon the buyer's business does not make the refusal to deal a violation of the Sherman Act. Damage alone does not constitute liability under the Act.

[In this case] the Stroh Brewery Company had one distributor in the territory under consideration before it terminated the plaintiff's franchise. It continued to have only one distributor thereafter. There is no allegation or contention that the beer of other breweries was not just as available in that area after the change in distributors as it was before . . . the substitution of one distributor for another in a competitive market of the kind herein involved does not eliminate or materially diminish the existing competition of distributors of other beers, is not an unusual business procedure, and in our opinion, is not an unreasonable restraint of trade." 318 F.2d at 287 (citations omitted)

In essence, the substitution of Vail for Marder as Conwed's manufacturing representative "changed the identity of a competitor, but did not eliminate competition." *Perryton Wholesale Inc. v. Pioneer Distributing Company of Kansas*, 353 F.2d 618, 622 (10th Cir. 1965).

In contending that the alleged conspiracy between Conwed and Vail to oust Marder violated the Sherman Act, plaintiffs have relied on *Albert Pick-Barth Co. v. Mitchell Woodbury Corp.*, 57 F.2d

96 (1st Cir. 1932); Perryton Wholesale Inc. v. Pioneer Distributing Co., *supra*; Atlantic Heel Co. v. Allied Heel Co., 284 F.2d 879 (1st Cir. 1960); C. Albert Sauter Co. v. Richard S. Sauter Co., Inc., 368 F.Supp. 501 (E.D.Pa.1973). These cases stand for the principle that a concerted effort to destroy a competitor by means "inimical" to free and honest competition violates § 1 of the Sherman Act. *Atlantic Heel, supra*, 284 F.2d at 884. In *Atlantic Heel*, for instance, the complaint alleged that defendants established a business competitive with plaintiff and *inter alia* (1) induced and enticed key employees to leave plaintiff; (2) visited plaintiff's plant without authorization for the purpose of obtaining confidential trade secrets; (3) disparaged plaintiff and its products by making false statements to plaintiff's customers and suppliers relative to plaintiff's financial standing; (4) interfered with plaintiff's source of raw materials, causing serious delays in delivery; (5) instituted, in bad faith, a lawsuit against the plaintiff and plaintiff's president for unlawful diversion of corporate funds; (6) falsely represented that defendant was affiliated with plaintiff for the purpose of obtaining credit; and (7) visited plaintiff's plant for the purpose of interfering with plant operations. As the court in *Perryton, supra*, pointed out "the intent of the conspiracy was to eliminate the competitor predominant in the area by subversion of his employees. Such elimination destroys rather than maintains competition, is an unreasonable restraint on trade, and violates the statute." 353 F.2d at 622.

The complaint in the instant case portrays an entirely different situation. Conwed, the named defendant, is not in competition with the Marders. It simply exercised its prerogative to change manufacturing representatives. Plaintiffs' complaint may state a valid claim against Conwed for breach of contract, but it fails to state a claim under the antitrust laws. I am aware that summary dispositions should be used spar-

**112**

ingly in antitrust litigation, Poller v. Columbia Broadcasting System, Inc., et al., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), but this is one of those rare instances in which the pleadings so clearly disclose the absence of an antitrust claim that dismissal is warranted.