Bobby Joe CRAIG, Appellant,

v.

SUN OIL COMPANY OF PENNSYL-VANIA, and William R. Claiborne, Appellees.

No. 74–1310.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 20, 1975.

Decided April 28, 1975.

Ray Painter, Jr., Tulsa, Okl. (Jack R. Givens, and Jones, Givens, Brett, Gotcher, Doyle & Atkins Inc., Tulsa, Okl., with him on the brief), for appellant.

Jon A. Baughman, Philadelphia, Pa. (John J. Runzer, Philadelphia, Pa., Robert M. Dubbs, St. Davids, Pa., and John A. Ladner, Tulsa, Okl., with him on the brief), for appellee, Sun Oil Co. of Pennsylvania.

Booth & Jay, and Frank R. Hickman, Tulsa, Okl., on the brief for appellee, William R. Claiborne.

Before SETH, HOLLOWAY and BARRETT, Circuit Judges.

SETH, Circuit Judge.

This is a private action under the Sherman Act seeking treble damages against Sun Oil Company of Pennsylvania and William R. Claiborne. The trial court granted motions of the defendants for summary judgment at the conclusion of discovery and after the filing of affidavits by plaintiff in response to the motions.

The defendant Claiborne held a distributorship franchise from Sun, and sold tires, batteries, and accessories pursuant thereto from a filling station in Tulsa. The tire sales by Claiborne were at retail to his station customers and at wholesale to other Sun stations and fleet owners. He sold this station to the plaintiff in May 1969, and plaintiff was given a franchise by Sun. Claiborne then began business under a Sun franchise from another location. This suit centers on this sale and subsequent relationships between Sun, plaintiff, and Claiborne. As mentioned, defendant Claiborne, after his sale to plaintiff, began a wholesale tire distributorship from a warehouse in Tulsa. This enterprise was financed for the most part by Sun. It was operated under the same type of contract with Sun as plaintiff had and Claiborne had before. There were in Tulsa and vicinity at least one or two other similar distributorships at all pertinent times.

The sale of the Claiborne station to plaintiff involved Sun in that it approved the new franchise to plaintiff for tires, batteries, and accessories, and it also financed for plaintiff equipment and machinery at the station. Part of the sale price was applied on debts which Claiborne owed to Sun, and the part for good will concerned only plaintiff and Claiborne. By February 1970 plaintiff's

business had failed, he was in default on notes to Sun, and Sun began suit, and took possession of the equipment.

The essence of plaintiff's complaint is that Claiborne and Sun conspired to set him up as an additional distributorship for the purpose of making it practical for Sun to finance Claiborne in the new outlet, and that once that purpose was achieved Claiborne and Sun continued to conspire to destroy his business by means of price, credit, and service discriminations in favor of Claiborne.

With respect to conspiracy to restrain trade under 15 U.S.C. § 1, the trial court concluded that even if such claim was supported in fact, which it found was not, a conspiracy which does not decrease competition or the number of competitors, or which replaces one distributor with another, is not actionable under the Sherman Act.

With respect to attempt or conspiracy to monopolize under 15 U.S.C. § 2, the court concluded the complaint made no allegations supporting a claim thereunder.

As to price, service, or credit discrimination under 15 U.S.C. § 13, the court found the only fact situation possibly involving price discrimination was a subsequently corrected mechanical error in a billing; it found that the same services were available to plaintiff and Claiborne alike, but that plaintiff neither accepted nor desired any assistance other than credit; and that discrimination in terms of credit does not as a matter of law violate the Robinson-Patman Act.

■ The allegations of plaintiff relating to the inducements for him to purchase Claiborne's station are that Claiborne represented that he was "getting entirely out of the tire business," and that plaintiff believed this and Sun knew about it. The plaintiff then alleges that the defendants used the proceeds of the sale to set up Claiborne at his new place of business to compete with plaintiff. Thus the conspiracy alleged was to induce plaintiff to buy, to use the money to start Claiborne at a new place, and

then for defendants to drive plaintiff out of business by price, credit, service, and facilities discrimination. The plaintiff in his complaint does not refer to any monopoly nor to any relevant markets; in fact, neither of the terms appear in the complaint. Two references are made in the complaint to 15 U.S.C. § 2 but are conclusionary only, and were stricken by the trial court. We agree that there are no allegations which can be taken as asserting a violation of 15 U.S.C.A. § 2.

The plaintiff is very specific that only a cause of action for an antitrust violation has been alleged, and that there is only one conspiracy alleged.

■ We have held that a conspiracy which results merely in the substitution of one distributor for another does not violate 15 U.S.C. § 1. Feddersen Motors, Inc. v. Ward, 180 F.2d 519 (10th Cir.); Shotkin v. General Electric Co., 171 F.2d 236 (10th Cir.). *See also,* Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir.). An increase in the number of distributors is not actionable under section 1.

■ Claiborne and Sun argue further that any fraudulent misrepresentations by which they allegedly induced plaintiff's entry into the market are at best actionable as a business tort. We agree. Plaintiff, however, responds that if such a tort is not acionable under section 1, it is evidence, together with the later discrimination, of the overall conspiracy against him and that in any event conspiracy to restrain trade is a per se violation of section 1.

As to the per se violation argument, based on the allegation of a conspiracy to restrain trade, the plaintiff refers to Albert Pick-Barth Co. v. Mitchell Woodbury Corp., 57 F.2d 96 (1st Cir.); the later First Circuit case of Atlantic Heel Co. v. Allied Heel Co., 284 F.2d 879 (1st Cir.); to C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., 368 F.Supp. 501 (E.D.Pa.), and to our decision in Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kansas, 353 F.2d 618 (10th Cir.). The attorneys at oral argument

directed the court's attention to Whitten v. Paddock Pool Builders, Inc., 508 F.2d 547, First Circuit, No. 74–1169, December 17, 1974, which overruled *Albert Pick-Barth* and *Atlantic Heel.* We do not consider Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kansas, 353 F.2d 618 (10th Cir.), to be applicable to this case, as the court was there concerned with a particular type of business activity which is not present here. Reference is made in the *Perryton* opinion to existing competition, and it is not necessarily a per se case despite the citation of the First Circuit cases.

The complaint, as to the purchase of the business, alleges only a business tort, if anything, as noted above. The subsequent events alleged, and the facts used on the motion for summary judgment, show a series of events which in total amounted to no more than a substitution of distributors. The "in and out" of plaintiff had no impact on the competitive situation, and was not actionable under the antitrust theory of plaintiff's case.

The complaint also contains allegations framed under the Robinson-Patman Act, assertions that the defendant Sun discriminated against plaintiff, as compared to Claiborne, during the relatively short period plaintiff was in business. Both were "distributors" under franchise agreements with Sun. The record shows that defendant Claiborne was engaged in wholesaling tires, sold to him by Sun, from a warehouse. Plaintiff operated the filling station with facilities for retail sales and service of tires, batteries, and accessories, as well as gasoline and oil. Thus tires were only a part of his business. Plaintiff alleges he acquired no Sun service stations as tire customers for wholesale sales which he was franchised to make.

The allegations of plaintiff considered in this aspect of the appeal, of course, relate to the "services" and "facilities" provided by Sun, 15 U.S.C. § 13(e), and to price discrimination under 15 U.S.C. § 13(a) to include the granting of credit.

■ It is clear that the allegations of price discrimination are based upon several billing errors made by Sun, but which were corrected. The trial court reached the same conclusion, and it would serve no useful purpose to detail the transactions. Similarly there is also no basis for any assertion of discrimination grounded on the handling of cash discounts, or the annual bonus plan.

■ The trial court concluded that although there may have been a dispute as to the facts relating to the credit terms and conditions arranged by Sun with Claiborne and those with plaintiff, this made no difference because the discrimination in credit terms as alleged could not, as a matter of law, be the basis for a claim under 15 U.S.C. § 13(a) or (e). We agree with this conclusion.

It is obvious that differences in the borrower's financial strength, business experience, and many other factors bring about differences in the terms of credit, security required, guarantees, and other devices used by creditors under these circumstances. *See* Rea v. Ford Motor Co., 497 F.2d 577 (3d Cir.); Skinner v. United States Steel Corp., 233 F.2d 762 (5th Cir.); and Clausen & Sons, Inc. v. Theo. Hamm Brewing Co., 284 F.Supp. 148 (D.Minn.), reversed on other grounds, 395 F.2d 388 (8th Cir.). We do not say that there could not be a discrimination in credit of such magnitude or nature as to constitute a violation, but no such extreme situation was alleged here by any means.

The allegations of the complaint relating to discrimination in the furnishing of facilities are conclusionary only. The record contains nothing which could relate to such an allegation. The allegations concerning the discrimination in the furnishing of services are somewhat more specific.

■ Plaintiff asserts that Sun did not assist him by advice and counseling provided to others to help in soliciting customers, and for other business matters. The deposition of the plaintiff, however, demonstrates that he did not really know

what advice or visits were to be expected. What he did expect by way of visits again related to the solicitation of the former customers of the station and his expectations as to competition from Claiborne. There is really no allegation of any specific way in which there was discrimination; there was thus nothing specific that plaintiff asserts was given others that he did not have available to him. Willis Craig, who managed the business for plaintiff for the first month and also during the period before it closed (in fact, for six out of the ten months the business existed), stated that he did not need any such help, that he did not ask for any. He said: "I didn't need any help. I didn't need them telling me how to run my business." It is apparent from the record that the plaintiff was disappointed in the amount of business he had, but there are no allegations of the specific discrimination, and his evidence shows advice was available but was not sought. We agree with the conclusions of the trial court as to this point.

The facts were clearly insufficient to establish a prima facie violation of the Robinson-Patman Act. The consequences described in FTC v. Simplicity Pattern Co., 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079, do not come about as the per se aspects were not brought into being.

■ There were no unresolved questions of fact relevant to the issues when the case is considered strictly as an antitrust action, as plaintiff on appeal asserts that it must be. Disposition by summary judgment under these rather unusual circumstances was proper. The complaint in the final analysis presented questions of law as to several issues, and as to the others, the facts developed left no unresolved questions under the applicable doctrines. *See,* First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569, and Bushie v. Stenocord Corp., 460 F.2d 116 (9th Cir.). Also there survives no cause of action under state law.

Affirmed.