**A.D.M. CORP. (Formerly Known As Frost Controls Corp.), Plaintiff, Appellant,**

v.

**SIGMA INSTRUMENTS, INC., et al., Defendants, Appellees.**

No. 80–1088.

United States Court of Appeals, First Circuit.

Argued June 6, 1980.

Decided Sept. 5, 1980.

Sondra L. Shick, Boston, Mass., with whom Bernard I. Kaplan, Martin, Morse, Wylie & Kaplan, Boston, Mass., and Angelo M. Torrisi, New York City, were on brief for appellant.

Michael S. Gardener, Boston, Mass., with whom Joseph C. Tanski and Mintz, Levin, Cohn, Glovsky & Popeo, Boston, Mass., were on brief for appellees, Arthur J. Thomson and Frost Controls, Inc.

Donald B. Gould, Boston, Mass., with whom James E. McGuire, James B. Farmer, and Goodwin, Procter & Hoar, Boston, Mass., were on brief for appellee, Sigma Instruments, Inc.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, BOYLE, District Judge.*

PER CURIAM.

In 1974 appellant A.D.M. Corporation sold its assets to appellee Frost Controls, Inc., which then resold them to appellee Sigma Instruments, Inc. (Sigma), an alleged competitor of appellant before the sale took place. Almost four years later, appellant filed suit in federal court, seeking treble damages under section four of the Clayton Antitrust Act, 15 U.S.C. § 15. Appellant claims that the sale and the manner in which it was accomplished violated section seven of the Clayton Antitrust Act, 15 U.S.C. § 18, and sections one and two of the Sherman Antitrust Act, 15 U.S.C. §§ 1 & 2. The theory of the complaint is that Sigma, along with Factors Corp., which controlled A.D.M. at the time of the sale, conspired with Arthur J. Thompson, A.D.M.'s president at the time of the sale, to divest

* Of the District of Rhode Island, sitting by designation.

A.D.M. of its assets without paying an adequate price. The district court, 481 F.Supp. 1297, after allowing several amendments to the complaint, dismissed the action for failure to state an antitrust claim.* We affirm.

■ The district court found that appellant's alleged injury was not "antitrust injury" in the sense of being "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful", *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). While it is not inconceivable that "mere" unfair business practices, or business torts, could in the proper situation constitute an antitrust violation, *see George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 560 (1st Cir. 1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975), the transmutation of these state law torts into federal antitrust violations would have to be based upon a finding that the injuries for which compensation is sought have an unreasonable effect on *competition*, as well as on a particular competitor. *See* III P. Areeda & D. Turner, Antitrust Law ¶ 737 (1978).

■ In the present case, appellant forthrightly conceded at oral argument that had there been no instances of disloyalty by its president, and had a fair price been paid for its assets, it would not have been harmed, would have had no complaint, yet would still have been divested of its assets and out of competition. This admission, which is consistent with the gravamen of the complaint, points out the correctness of the district court's holding. If the sale of assets had an effect on competition, it would have occurred whether or not appellant was harmed. There is thus lacking the essential connection between injury and the aims of the antitrust laws necessary to give appellant standing.

Had appellant been less forthcoming in characterizing its injury, the result, we think, would nevertheless be the same. To the extent that the sale of assets by one competitor to another implicates antitrust concerns, section seven of the Clayton Antitrust Act would be the most clearly pertinent statutory provision. Realizing this, appellant focuses its claim on appeal primarily on this provision of the federal antitrust laws, arguing that the sale of assets "resulted at the very least in a reasonable probability of a substantial lessening of competition  .  .  .  ." While such an allegation could in the proper circumstances state a claim for injunctive relief under section sixteen of the Clayton Antitrust Act, 15 U.S.C. § 26, standing for treble damage actions under section four is less readily available than is standing under section sixteen. *See* II P. Areeda & D. Turner, Antitrust Law ¶ 335e (1978). Moreover, the interests of the target corporation itself, in this case appellant, are outside of section seven's protection. *See GAF Corp. v. Circle Floor Co.*, 463 F.2d 752, 757–59 (2d Cir. 1972), *cert. dismissed*, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973); *Missouri Portland Cement Co. v. Cargill*, 498 F.2d 851, *cert. denied*, 419 U.S. 883 (1974); II P. Areeda & D. Turner, *supra*, at ¶ 346b. Nor do we see any reason why the result in this case should be any different under the Sherman Act merely because the sale itself is characterized as a "conspiracy", or because boilerplate language concerning an "attempt to monopolize" is included in the complaint. Accordingly, the judgment of the district court is affirmed.

*Affirmed.*

---

* Several causes of action arising under state law and contingent upon a finding of pendent jurisdiction were also dismissed in light of the dismissal of the federal claims.