**MERKLE PRESS INC., Plaintiff,**

v.

**Edgar A. MERKLE, Edgar Kent Merkle, Armand E. Morte, Joseph P. Connors, Philip L. Airulla, Gabriel J. Fontana, Jr., Fontana Lithograph, Inc. and Edgar Kent Merkle, Armand Morte, Joseph P. Connors, Philip L. Airulla and Gabriel J. Fontana, Jr. d/b/a Affiliated Graphics, Defendants.**

Civ. A. No. J–79–862.

United States District Court,
D. Maryland.

Jan. 9, 1981.

Paul V. Niemeyer, Melville W. Feldman, Michael B. Rosenberg, Washington, D. C., for plaintiff.

J. Michael McWilliams, J. M. Dryden Hall, Jr., Baltimore, Md., Michael P. Bentzen, Washington, D. C., J. Frederick Motz, Baltimore, Md., James T. Reilly, Silver Spring, Md., for defendants.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

Plaintiff filed this suit under Section 1 of the Sherman Act, 15 U.S.C. § 1 and the Maryland Antitrust Act, Md.Com.Law Code Ann. § 11–204(a)(1), as well as for tortious interference with contract, breach of fiduciary duty, unlawful conspiracy, and unfair trade practices. Defendants have moved to dismiss on a number of grounds, but it is apparent that the major thrust of the motion is that plaintiff has failed to state a claim under Section 1 of the Sherman Act. Because all of plaintiff's other claims are based in state law and are, therefore, pendent to plaintiff's Sherman Act claim, the Court must initially address the motion as to the Sherman Act claim.

### Facts Alleged

Merkle Press is a Maryland corporation which is a wholly-owned subsidiary of Pubco Corporation. The individual defendants are former employees of Merkle who served in various corporate officer positions ranging from Chairman of the Board of Pubco, Chairman of the Board of Merkle, President of Merkle, Vice President of Merkle and Sales Representative.

It is alleged that these employees of Merkle Press conspired with one another in order to acquire control of plaintiff. This attempt ultimately failed in 1972. These defendants made a second attempt at acquiring control of Merkle Press in 1972 and this also failed. After this failure, it is alleged that the defendants, beginning in 1972 or 1973, conspired to establish a competing business and eliminate plaintiff as a competitor. Sometime prior to May 12, 1976, defendants formed a business known as Affiliated Graphics and subsequently purchased an interest in the defendant Fontana Lithograph, Inc.

Plaintiff alleges a number of specific acts of unfair competition which it contends were in furtherance of the conspiracy. Defendants allegedly made misrepresentations to employees of Merkle Press concerning Pubco's intention to halt salary increases or bonuses in order to create dissatisfaction and induce these employees to leave their employment. Misrepresentations were allegedly made by defendants to Merkle Press customers to the effect that plaintiff's prices were too high and their work was substandard in order to induce these customers to discontinue doing business with

plaintiff. Misrepresentations were allegedly made to plaintiff's suppliers to the effect that plaintiff was failing financially in order to induce them to cease selling to plaintiff. Defendants allegedly used trade secrets obtained from plaintiff in order to induce plaintiff's customers to move their business from plaintiff to Affiliated and Fontana Lithograph. Defendants are alleged to have misrepresented to plaintiff's customers and suppliers that Affiliated and Fontana were connected with plaintiff in order to divert business and supplies. Defendants allegedly enticed plaintiff's employees to leave plaintiff's employ for Affiliated or Fontana Lithograph. Finally, defendants are alleged to have made misrepresentations to certain financial institutions as to plaintiff's financial condition for the purpose of causing financial difficulties for plaintiff.

### Pick-Barth Doctrine

Defendants have moved to dismiss plaintiff's claim under Section 1 of the Sherman Act on the ground that the facts as alleged do not state a claim. The issue to be resolved is whether or not a conspiracy by officers of a corporation to start a new competitor and promote that new competitor through allegedly unfair business practices comes within Section 1 of the Sherman Act.

Analysis of practices under Section 1 of the Sherman Act is a two-step process. One standard which the courts have looked to is the rule of reason which requires examination of the purpose and anticompetitive effect of a certain practice, as well as the market power of the parties involved. *Chicago Board of Trade v. United States*, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918). Because of the inherent difficulties in applying the rule of reason, the courts have adopted a category of practices which "because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."

*Northern Pacific Railway v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1957). The Court will therefore examine the instant allegations to determine whether or not the practices alleged constitute per se violations and, failing that, whether a violation could be proven within the rule of reason.

### Per Se Rule

The history of unfair business practices coming within Section 1 of the Sherman Act has its origins in the *Pick-Barth* doctrine. The *Pick-Barth* doctrine was established in *Albert Pick-Barth Co. v. Mitchell Woodbury Corp.*, 41 F.2d 148 (1st Cir. 1930). In that case, two of plaintiff's employees had conspired with defendant, a competitor of plaintiff who was a dominant factor in the field nationally, to increase defendant's market share in the New England region through unfair business practices such as appropriating plaintiff's customer lists and enticing plaintiff's employees to leave. Plaintiff filed suit for a violation of Section 1 of the Sherman Act and defendant responded with a demurrer. The court held that the allegation of the complaint sufficiently charged a conspiracy to restrain interstate commerce.

The case went on to trial and the jury returned a verdict in favor of plaintiff. In response to a special interrogatory, however, the jury found that defendant's activities had not effected an unreasonable restraint of trade. On appeal, the defendant argued that the verdict should be overturned on the ground that the conspiracy had not, in fact, resulted in an injury to the public through the lessening of competition. The court rejected this argument, holding that it was unnecessary to prove a public injury where the purpose of the conspiracy was to eliminate a competitor through unfair means. *Albert Pick-Barth Co. v. Mitchell Woodbury Corp.*, 57 F.2d 96 (1st Cir.), *cert. denied*, 286 U.S. 552, 52 S.Ct. 503, 76 L.Ed. 1228 (1932).

The First Circuit reaffirmed its view in *Pick-Barth* in *Atlantic Heel Co. v. Allied Heel Co.*, 284 F.2d 879 (1st Cir. 1960). In

that case, the defendants were former employees of plaintiff who had started a competing business and promoted it through unfair business practices such as appropriating customer lists, enticing employees to leave, and disparaging plaintiff. The court held that allegations of a "conspiracy to destroy a competitor by means so inimical 'to free and full flow of interstate trade' [were such] as to constitute a per se violation of Section 1 of the Sherman Act."

More recently, the First Circuit has retreated on its stand on the *Pick-Barth* doctrine. In *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547 (1st Cir. 1974). The court clearly rejected the per se aspects of the *Pick-Barth* doctrine.

> Insofar as *Pick-Barth* and *Atlantic Heel* may be said to stand for the broad proposition that unfair competitive practices accompanied by an intent to hurt a competitor constitute per se violations of the antitrust laws, we do not now accept their teaching.

*Id.* at 561. The court cited as some of its reasons for reappraising its holding in *Pick-Barth* its own failure to define with any precision the practices which would constitute per se violations, the availability of alternative remedies and the danger of casual extension of the per se category.

■ It is obvious that the per se aspects of the *Pick-Barth* doctrine have lost their vitality. The post *Whitten* decisions provide ready support for this proposition. *See Craig v. Sun Oil Company of Pennsylvania*, 515 F.2d 221 (10th Cir. 1975); *Northwest Power Products, Inc. v. Omark Industries*, 576 F.2d 83 (5th Cir. 1978); *Stifel, Nicolaus & Company v. Dain, Kalman & Quail, Inc.*, 578 F.2d 1256 (8th Cir. 1978); *Associated Radio Service Co. v. Page Airways, Inc.*, 624 F.2d 1342 (5th Cir. 1980). It is, therefore, patent that the practices alleged in the complaint do not constitute per se violations of Section 1 of the Sherman Act.

### Rule of Reason

■ Having concluded that the alleged practices do not constitute per se violations of Section 1, the Court must consider whether these allegations, if proven, would constitute a violation of Section 1 under the rule of reason. The crucial difference between alleging a per se violation and one within the rule of reason is that there must be some allegation of harm to the public. Plaintiff has made such an allegation.

> The course of action undertaken and continued by the defendants . . . has had and will continue to have the effect of unreasonably restraining trade and lessening competition in the large production commercial printing of magazines, trade publications and other periodicals and printed matter, thereby injuring the public and affecting interstate and intrastate commerce and trade by limiting the availability of choice to customers of this trade through the lessening of competition.

The Court entertains grave doubts as to the sufficiency of this allegation. None of plaintiff's factual allegations tends to support it. The substance of plaintiff's allegations is that defendants have gained business at its expense. The facts as alleged show two competitors where there was once only one. This does not appear to be a lessening of competition. Accepting the factual allegations of the complaint as true, the Court finds no support for plaintiff's conclusory allegation that competition has been harmed. *See Hsing Chow v. Union Central Life Insurance Co.*, 457 F.Supp. 1303 (E.D.N.Y.1978). Thus, absent any allegation of public harm, plaintiff cannot prove a violation of Section 1 of the Sherman Act within the rule of reason. *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail*, 578 F.2d 1256 (8th Cir. 1978).

Even assuming that plaintiff has sufficiently alleged an injury to the public, that would not necessarily mean that plaintiff has stated a cause of action for a violation of Section 1. It has been suggested that proof of a conspiracy within *Pick-Barth*, after its modification by *Whitten*, requires four elements:

1. An agreement, combination or conspiracy;
2. The use of unfair methods of competition as a part thereof;

**54**

3. The intent to effectively eliminate plaintiff from the relevant market; and

4. Defendant constitutes a significant factor in the relevant market.

*Tower Tire & Auto Center v. Atlantic Richfield Co.*, 392 F.Supp. 1098 (S.D.Tex.1975); *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail*, 430 F.Supp. 1234, 1240 (N.D.Iowa 1977). The complaint clearly sets forth allegations sufficient to satisfy the first three of these elements. The complaint, however, fails to allege the market power of defendants' enterprise.

The element of market power is not as clearly established as the other three elements. Some fairly recent decisions have interpreted *Whitten* as requiring that the predator in such a case constitute a significant market factor. *Northwest Power Products, Inc. v. Omark Industries*, 576 F.2d 83 (5th Cir. 1978); *Snyder v. Howard Johnson's Motor Lodges, Inc.*, 412 F.Supp. 724 (S.D.Ill.1976); *Tower Tire and Auto Center, Inc. v. Atlantic Richfield Co.*, 392 F.Supp. 1098 (S.D.Texas 1975). The First Circuit does note in *Whitten* that both *Pick-Barth* and *Atlantic Heel* "presented an effort by a defendant which was a significant factor in the market to eliminate a competitor." 508 F.2d at 562. The *Pick-Barth* opinion stresses a number of times that the defendant in that case was alleged to be a "dominating factor" in the field. 41 F.2d at 149.

The Court finds that to state a claim within Section 1 of the Sherman Act for conspiracy to eliminate a competitor by the use of unfair means, plaintiff must allege that, at a minimum, the predator constituted a significant factor in the particular product market. The Court reaches this conclusion for a number of reasons. It is clear from the evolution of the case law decided under *Pick-Barth* that it is a doctrine which has been so narrowed as to bring into question even its remaining viability. Courts must be circumspect in converting ordinary business torts into violations of the antitrust laws. To do so would be to "create a federal common law of unfair competition" which was not the intent of the antitrust laws. *Mar Food Corp.*

*v. Doane*, 405 F.Supp. 730, 731 (N.D.Ill. 1975). The Sherman Act protects competition and not competitors. The appropriate remedy in this case is one in state law and not under the federal antitrust laws.

In summary, because the Court finds that plaintiff has failed to sufficiently allege an injury to competition and that defendants were a significant factor in the relevant product market, the claim under Section 1 of the Sherman Act will be dismissed. Because plaintiff's other claims are based in state law, this Court is without jurisdiction as to them, and they must also be dismissed.