823 F.2d 829
 1987-1 Trade Cases 67,642
 MILITARY SERVICES REALTY, INC., Plaintiff-Appellant,
v.
REALTY CONSULTANTS OF VIRGINIA, LTD.; Harlan R. Rentfrow;
Pamela J. Rentfrow; Linda Fox Jarvis; Julie T. Walter;
Ann Marie Martin; Sandra Owens; George Ayers; Scott P.
Ayers, Defendants-Appellees.
 No. 86-3130.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 8, 1987.
Decided July 21, 1987.
 
 1
 Stanley E. Sacks (Sacks & Sacks, Norfolk, Va., on brief), for plaintiff-appellant.
 
 
 2
 Gregory Albert Giordano (Samuel M. Kroll, Clark & Stant, P.C., Virginia Beach, Va., on brief), for defendants-appellees.
 
 
 3
 Before RUSSELL and WILKINSON, Circuit Judges, and JOSEPH FLETCHER ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 
 JOSEPH FLETCHER ANDERSON, Jr., District Judge:
 
 4
 This is an action brought pursuant to Section 1 of the Sherman Antitrust Act, 15 U.S.C.A. Sec. 1 (West Supp.1987). The district court found that no genuine issue of material fact existed as to the effect on competition resulting from defendants' alleged anti-competitive conduct and granted summary judgment to the defendants. We affirm.
 
 
 5
 Appellant, Military Realty Services, Inc. ("Military"), a real estate company formed in 1976, specialized in catering to military personnel who are transferred to the Tidewater, Virginia area. It developed creative techniques for identifying and soliciting potential customers. Military's real estate agents, who were each responsible for a specific geographical area of the country, would determine the names and addresses of military personnel with impending transfers to the Tidewater area, then visit with these potential customers, before their move, in an effort to locate a new home for them. Highly specialized ads and sales materials were developed to promote Military's relocation program.
 
 
 6
 Appellee, Realty Consultants, Inc. ("Realty Consultants") was one of several other real estate firms in the Tidewater market area who were regularly engaged, wholly or in part, in the business of selling homes to military transferees.
 
 
 7
 In 1985, all of Military's sales agents left Military and began working for Realty Consultants. Allegedly, they took with them customer lists and other marketing materials, and immediately began utilizing the same sales techniques that had been developed by Military. Eventually, declining sales forced Military to close its doors.
 
 
 8
 Military brought suit against Realty Consultants and nine individual defendants[1] alleging a violation of Section 1 of the Sherman Act, along with pendent state causes of action. The gravaman of Military's complaint is that the appellees, by unfair competition and unfair business practices, destroyed Military as a competitor in the relevant market. In awarding summary judgment, the district court dismissed the federal claim with prejudice; the state claims were dismissed without prejudice.
 
 I.
 
 9
 Military first contends that the court erred in granting summary judgment because the appellees' actions constituted a per se violation of the Sherman Act. Military asserts that an effect on competition need not be proven because unfair business practices and unfair competition constitute per se violations of the Act.
 
 
 10
 We reject the invitation to characterize unfair business practices as per se violations. Except for two early decisions, in the First[2] and Tenth[3] Circuits, the overwhelming majority of courts considering the issue have held that a conspiracy to eliminate a competitor by unfair means does not constitute a per se violation of the Act. See, e.g., Sutliff, Inc. v. Donovan Companies, Inc., 727 F.2d 648 (7th Cir.1984); L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414 (11th Cir.1984); Stifel, Nicolaus & Company, Inc. v. Dain, Kalman & Quail, Inc., 578 F.2d 1256 (8th Cir.1978); Northwest Power Products, Inc. v. Omark Industries, Inc., 576 F.2d 83 (5th Cir.1978), cert. denied, 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979). Even in the First and Tenth Circuits, later decisions have greatly limited, if not overruled, the cases which held that the per se rule applies to unfair competition under the Sherman Act. See A.D.M. Corp. v. Sigma Instruments, Inc., 628 F.2d 753 (1st Cir.1980); Craig v. Sun Oil Company of Pennsylvania, 515 F.2d 221 (10th Cir.1975).
 
 
 11
 Courts have generally disfavored a per se rule for unfair competition for reasons which go to the countervailing policy considerations underlying the law of unfair competition and antitrust:
 
 
 12
 [T]he purpose of antitrust law and unfair competition generally conflict. The thrust of antitrust law is to prevent restraints on competition. Unfair competition is still competition and the purpose of the law of unfair competition is to impose restraints on that competition. The law of unfair competition tends to protect a business in the monopoly over the loyalty of its employees and its customer lists, while the general purpose of the antitrust laws is to promote competition....
 
 
 13
 Northwest Power Products, Inc. v. Omark Industries, Inc., 576 F.2d at 88-89.
 
 
 14
 We reject a per se rule for unfair competition in this circuit and hold that, in order to be actionable under the Sherman Act, such conduct must be determined to violate the Act under the traditional "rule of reason" analysis.
 
 II.
 
 15
 We now turn to the second issue raised on appeal: did the pleadings, discovery, and affidavits raise genuine issues of fact rendering summary judgment inappropriate?
 
 
 16
 In its order granting summary judgment, the district court correctly noted that to recover under Section 1 of the Sherman Act, the plaintiff must prove that the defendants' actions adversely affected competition and that the injury complained of is a type that the antitrust laws were designed to guard against. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697-98, 50 L.Ed.2d 701 (1977). In proving a Section 1 violation, the plaintiff must show the market shares of the competitors in the relevant market. Northwest Power Co. v. Omark Industries, 576 F.2d at 89. Facts must be presented to the court to enable it to ascertain the market power of the defendant both before and after the alleged anti-competitive conduct. Havoco of America, LTD. v. Shell Oil Company, 626 F.2d 549, 558 (7th Cir.1980). Evidence concerning the effect of the defendants' conduct on the relevant market is essential in analyzing a Section 1 claim under a rule of reason analysis. See National Society of Professional Engineers v. U.S., 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978).
 
 
 17
 After carefully reviewing the record, we are of the opinion that the district judge correctly determined that no genuine issue of material fact exists regarding the effect on competition of the conduct complained of in this case. Military's experts were simply unable, when deposed, to provide any facts concerning injury to competition, nor could they adequately identify the relevant market. Moreover, Donald Leneski, Military's president, stated in his deposition that he did not know who his competitors were nor could he list the competitors of Realty Consultants. He could not name any competitor of Realty Consultants, except Military, that has been restrained in interstate commerce.
 
 
 18
 The antitrust laws were designed to protect competition, not competitors. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). The elimination of a single competitor standing alone, does not prove anti-competitive effect. E-H International, Inc. v. Autek Systems Corp., 1982-83 Trade Cas. (CCH) p 65,026 (N.D.Cal. Feb. 11, 1982).[4]
 
 
 19
 In an attempt to survive the summary judgment motion, Military submitted an affidavit of one of its experts, prepared after the deposition, which contains a conclusory paragraph that "a material diminution in competition has occurred in the relevant market." However, as noted by the district court, the expert based his conclusion on general economic theory and did not conduct any market surveys or other studies of the relevant market to determine the actual effect the appellees had on competition. The affidavit does not contain any factual predicate for its theoretical conclusion. In short, the affidavit appears to be an after-the-fact attempt to overcome the admissions elicited from the expert at deposition. Military cannot thwart the purposes of Rule 56 by creating issues of fact through affidavits that contradict its own depositions. Miller v. A.H. Robins Co., Inc., 766 F.2d 1102, 1104 (7th Cir.1985); Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir.1984).
 
 
 20
 Military's remedy, if any, must be found in the state courts.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 In addition to Realty Consultants, the suit named as defendants the sales agents who had left Military to work for Realty Consultants, and Realty Consultants' principal officers and stockholders
 
 
 [2]
 Mitchell Woodbury Corp. v. Albert Pick Barth Co., 41 F.2d 148 (1st Cir.1930)
 
 
 [3]
 Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kan., 353 F.2d 618 (10th Cir.1965)
 
 
 [4]
 As one district court has noted, "courts should be circumspect in converting ordinary business torts into violations of antitrust laws. To do so would be to 'create a federal common law of unfair competition' which was not the intent of the antitrust laws." Merkle Press, Inc. v. Merkle, 519 F.Supp. 50 (D.Md.1981) (citing Mar Food Corp. v. Doane, 405 F.Supp. 730, 731 (N.D.Ill.1975))