**UXB SAND & GRAVEL, INC.**

v.

**ROSENFELD CONCRETE CORPORATION et al.**

**90–471–Appeal.**

Supreme Court of Rhode Island.

Nov. 19, 1991.

W. James McKay, William M. Russo, Adler, Pollock & Sheehan, Providence, for plaintiff.

Robert Fine, Susan Huntley, Licht & Semonoff, Joseph A. Kelly, Carroll, Kelly & Murphy, Providence, for defendant.

## OPINION

KELLEHER, Justice.

The plaintiff, UXB Sand & Gravel, Inc. (UXB), filed a complaint in the Providence County Superior Court naming as defendants Rosenfeld Concrete Corporation (Rosenfeld), Judith P. and D. Barry Parker (the Parkers), and Myrtle Elizabeth Price (trustee). This controversy arises as a result of the sale of real estate located in Uxbridge, Massachusetts. UXB seeks damages for breach of contract, fraud, and tortious interference with a contract. Later UXB amended its complaint to add counts 10 and 11, which allege violations of the Rhode Island Antitrust Act, G.L.1956 (1985 Reenactment) §§ 6–36–4 and 6–36–5. Following an extended period of discovery, the trial justice granted Rosenfeld's motion for summary judgment because the evidence presented by UXB was insufficient to prove its claims of restraint of trade and attempted monopolization of the gravel-extraction industry. Consequently UXB is now before us on its appeal from the granting of partial summary judgment dismissing the antitrust counts.

Both UXB and Rosenfeld are in the gravel business. UXB, a Rhode Island corporation, was created in 1984 solely to mine and sell sand and gravel it removed from property owned by the Parkers. UXB and the Parkers had entered into an agreement that allowed UXB to remove gravel from the Parkers' land. The property, which is now included in a trust controlled by the Parkers, is situated in Uxbridge, Massachusetts, and contains valuable raw material for UXB's business, that is, high-quality bank-run sand and gravel deposits.

The Uxbridge extraction site is suitable for UXB's business because of the high-quality content of the extracted stone as well as its convenient proximity to custom-

ers in northern Rhode Island and southeastern Massachusetts. The high quality of the extracted gravel meets all industry standards without the need for expensive processing. Moreover, this particular type of bank-run gravel yields similarly high-grade washed stone, which requires minimal processing. Consequently UXB had access to an abundant and cost-effective supply of quality gravel.

UXB is owned by two individuals, Jackson Despres and Charles Tasca (Tasca). Tasca's company, Tasca Sand & Gravel Co., Inc., has its own supply of gravel banks and uses its own gravel. UXB sold its stone products to two companies, namely, Smithfield Peat Co., Inc., and Tasca Sand & Gravel Co., Inc., both of which in turn sold to others. UXB has no employees.

In early 1989 UXB negotiated with the Parkers to purchase their property, but no purchase-and-sale agreement was executed. In time negotiations between the two terminated. Later in 1989 Rosenfeld, a Massachusetts corporation with its principal place of business in Milford, Massachusetts, and a direct competitor of UXB, purchased the property at issue from the Parkers. As a result UXB brought an action in the Superior Court against Rosenfeld and the Parkers [1] on a variety of theories. Later the complaint was amended to include the antitrust violations that are before us at this time. Specifically UXB alleges that Rosenfeld, by purchasing the Parkers' property, violated §§ 6–36–4 and 6–36–5 [2] by restraining trade and attempting to monopolize the gravel-extraction industry by eliminating UXB as a competitor.

UXB contends that the trial justice, in granting Rosenfeld's motion for summary judgment, erred when he applied incorrect legal principles in his determination of the requisite elements necessary to prove the alleged antitrust violations. Specifically

UXB argues that Rosenfeld's market share should not have been considered as a material issue. Since Rosenfeld's purchase of the Uxbridge property effectively put UXB out of business, UXB argues, the purchase is per se anticompetitive and cites in support of its proposition *Albert Pick–Barth Co. v. Mitchell Woodbury Corp.,* 57 F.2d 96 (1st Cir.), *cert. denied,* 286 U.S. 552, 52 S.Ct. 503, 76 L.Ed. 1288 (1932), and thus obviates the trial justice's need to consider additional proof. *Blanton v. Mobil Oil Corp.,* 721 F.2d 1207, 1214 (9th Cir.1983), *cert. denied,* 471 U.S. 1007, 105 S.Ct. 1874, 85 L.Ed.2d 166 (1985). UXB further contends that even if Rosenfeld's market share is considered a material issue, Rosenfeld failed to meet its burden of proof because its responses to interrogatories were based on both inaccurate relevant market data and a miscalculation of Rosenfeld's market share. We believe UXB's contentions are without foundation.

Counts 10 and 11 of UXB's complaint are based upon the Rhode Island Antitrust Act, §§ 6–36–4 and 6–36–5, which track the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 (1988). The Rhode Island Antitrust Act must be "construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable." Section 6–36–2(3).

 The purpose of the antitrust laws is to protect competition, not competitors. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701, 711–12 (1977). Moreover, it is clear that antitrust laws do not prohibit all restraints of trade but only unreasonable restraints. *Board of Trade of Chicago v. United States,* 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918). Accordingly the Sherman Antitrust Act is to be construed liberally, to adopt to the changing standards

---

**1.** Defendant Myrtle Elizabeth Price is trustee of a trust controlled by the Parkers that includes the land at issue.

**2.** General Laws 1956 (1985 Reenactment) § 6–36–4 provides: "Restraint of trade or commerce.—Every contract, combination, or conspiracy in restraint of, or to monopolize, trade or commerce is unlawful."

Section 6–36–5 provides: "Establishment, maintenance, or use of monopoly power.—The establishment, maintenance, or use of a monopoly, or an attempt to establish a monopoly, of trade or commerce by any person, for the purpose of excluding competition or controlling, fixing, or maintaining prices, is unlawful."

of commercial production and distribution that have evolved since its passage. *United States v. E.I. DuPont deNemours & Co.*, 351 U.S. 377, 386, 76 S.Ct. 994, 1002, 100 L.Ed. 1264, 1275–76 (1956).

■ UXB's count 10, which alleges unreasonable restraint of trade, must be analyzed under either the per se standard or the rule of reason standard. In a per se antitrust violation, intent is not a required element. 15 U.S.C. § 1. Indeed, the sole issue in per se antitrust analysis is the effect of the alleged practice and not the purpose behind the practice. *Id.; see also L. Ray Packing Co. v. Commercial Union Insurance Co.*, 469 A.2d 832 (Me.1983). Under a per se analysis, courts are presumed to be of limited utility to examine difficult economic problems, and as a result rigid restrictions on territories and customers are per se illegal. *United States v. Topco Associates, Inc.*, 405 U.S. 596, 608–09, 92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515, 525–26 (1972). The more common standard employed in antitrust litigation is the rule of reason because the United States Supreme Court is reluctant to extend the per se approach beyond specific and limited categories, which include price fixing, horizontal market allocations, group boycotts, and certain patent abuses. *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 559 (1st Cir.1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975). Outside these specific categories, the Supreme Court effectively extended the per se rule into a rule of reason after *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 9, 99 S.Ct. 1551, 1557, 60 L.Ed.2d 1, 9–10 (1979), and has affirmed the rule of reason rationale in recent antitrust cases. *See, e.g., Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 723–24, 108 S.Ct. 1515, 1519–20, 99 L.Ed.2d 808, 816–17 (1988); *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 458–59, 106 S.Ct. 2009, 2017–18, 90 L.Ed.2d 445, 456–57 (1986); *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 287–88, 105 S.Ct. 2613, 2615–16, 86 L.Ed.2d 202, 206–08 (1985);

*NCAA v. Board of Regents of the University of Oklahoma*, 468 U.S. 85, 103–04, 104 S.Ct. 2948, 2961–62, 82 L.Ed.2d 70, 85–86 (1984).

In *Broadcast Music, Inc.*, the court held that courts should consider the practical realities of an industry when determining whether a particular conduct or activity falls within the per se standard. 441 U.S. at 9, 99 S.Ct. at 1557, 60 L.Ed.2d at 9–10. However, the Court nonetheless reasoned that the application of the "more discriminating" rule of reason produced a more sound and efficient result. *Id.* at 24, 99 S.Ct. at 1565, 60 L.Ed.2d at 19.

■ UXB contends that Rosenfeld's conduct, purchasing the Uxbridge property, demonstrates a conspiratorial attempt to eliminate UXB by unfair means as a competitor. This per se competitive conduct presumes conclusive proof of an unreasonable effect on competition requiring the application of the per se standard. *Albert Pick–Barth Co.*, 57 F.2d at 102.

This court does not subscribe to the contentions espoused by UXB. Through the years case law and commentary have criticized and rejected *Pick–Barth*. *Military Services Realty, Inc. v. Realty Consultants of Virginia, Ltd.*, 823 F.2d 829, 831 (4th Cir.1987); *Mid–West Underground Storage, Inc. v. Porter*, 717 F.2d 493, 496–97 (10th Cir.1983); *A.H. Cox & Co. v. Star Machinery Co.*, 653 F.2d 1302, 1308 n. 7 (9th Cir.1981); *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 555–56 (7th Cir.1980); *Northwest Power Products, Inc. v. Omark Industries, Inc.*, 576 F.2d 83 (5th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979); P. Areeda & H. Hovenkamp, *Antitrust Law* ¶¶ 1503–1511 (1991 Supp.); H. Hovenkamp, *Economics and Federal Antitrust Law* ¶ 5.4 (1985). Furthermore, the First Circuit, which authored *Pick–Barth*, has essentially overruled the case and its progeny to eliminate the notion that the per se rule applies to unfair competition under the Sherman Act. *See A.D.M. Corp. v. Sigma Instruments, Inc.*, 628 F.2d 753, 754 (1st Cir.1980) (mere unfair business practices or business torts may not constitute antitrust

violations); *George R. Whitten, Jr., Inc.,* 508 F.2d at 560 ("garden variety" competitive business torts do not amount to a per se violation of antitrust laws). Moreover, an overwhelming majority of courts have held that a conspiracy to eliminate a competitor by unfair means does not constitute a per se violation of the antitrust laws. *Military Services Realty, Inc.,* 823 F.2d at 831; *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 421 (11th Cir. 1984); *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 655 (7th Cir.1984); *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc.,* 578 F.2d 1256, 1260–61 (8th Cir.1978); *Northwest Power Products, Inc. v. Omark Industries, Inc.,* 576 F.2d at 90. *See also* Note, *Antitrust Treatment of Competitive Torts: An Argument for a Rule of Per Se Legality Under the Sherman Act,* 58 Tex. L.Rev. 415 (1980). As one court explained:

"[P]laintiff's argument that [it] will be forced out of business and that this development will have an anticompetitive effect through loss of an option for consumers is similarly without merit. * * * '[T]here is a sense in which eliminating even a single competitor reduces competition. But it is not the sense that is relevant in deciding whether the antitrust laws have been violated.' Competition means that some may be forced out of business. The antitrust laws are not designed to guarantee every competitor tenure in the marketplace." *Great Escape, Inc. v. Union City Body Co., Inc.,* 791 F.2d 532, 540 (7th Cir.1986).

Accordingly we reject UXB's suggestion that we rely upon the per se standard espoused *Pick–Barth.* Instead, we turn to consider whether the application of the rule of reason, when applied to the pleadings before us, raises a genuine issue of fact that would render the motion for summary judgment improper.

■ Applying the rule of reason analysis to both counts 10 and 11, we examine the comparable federal statute. To establish a violation under § 1 of the Sherman Act, in its claim alleging restraint of trade, UXB must demonstrate three elements: (1)

an agreement between two or among more than two persons or business entities, (2) an intent to harm or unreasonably restrain competition, and (3) an injury to competition beyond the impact of the claimant. *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 811 (9th Cir.1988). In addition, to establish a violation under § 2 the Sherman Act, in its claim alleging attempted monopolization, UXB must show (1) Rosenfeld's specific intent to control prices or destroy competition, (2) anticompetitive conduct directed toward that purpose, (3) a dangerous probability of success, and (4) causal antitrust injury. *Id.; see also H.J. Baker & Bro., Inc. v. Orgonics, Inc.,* 554 A.2d 196, 204 (R.I.1989). The rule of reason analysis requires that the effects of the alleged violations are balanced so that procompetitive effects are compared with anticompetitive effects. & *Auburn News Co. v. Providence Journal Co.,* 504 F.Supp. 292, 300 (D.R.I.1980), *rev'd on other grounds,* 659 F.2d 273 (1st Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

■ In antitrust cases summary judgment is appropriate when a plaintiff fails to present evidence to support a conclusion that the alleged anticompetitive conduct is more probable than not. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986); *Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 1470–71, 79 L.Ed.2d 775, 785–86 (1984). The Court stated: "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts. * * * [I]f the factual context renders [that party's] claim implausible if the claim is one that simply makes no economic sense—[the party] must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552.

■ The trial justice correctly concluded that Rosenfeld has neither a monopoly nor the intent to monopolize. Furthermore Rosenfeld did not attempt to monopolize

the gravel industry by its conduct in this dispute. That UXB expected to own the property at issue which, from UXB's point of view, was sold out from under it by the Parkers to Rosenfeld, is reasonable. However, we agree with the trial justice's ruling that even though Rosenfeld's conduct may have injured UXB and may have added to the gravel sources available to Rosenfeld to satisfy its customers, UXB had other sources of stone upon which to draw in order to supply its own customers, a situation that may lessen, but will not eliminate, the competition in the gravel industry. Rosenfeld's purchase of the Uxbridge property does not constitute a per se violation of the antitrust laws. Consequently UXB may be classified as a disappointed would-be purchaser of property, but its disgruntlement cannot transform its current business woes into antitrust claims. After determining the relevant product and geographic market, the trial justice also ruled that there was no probability that Rosenfeld's action would successfully eliminate competition. Although a question of fact may exist regarding what percentage of the market Rosenfeld may control, a question that submitted confidential data failed to resolve,[3] the evidence nevertheless indicated that several other gravel companies were operating within the geographical area surrounding the Parkers' property. The record indicates that UXB did not submit a pebble of evidence indicating injury to competition beyond the harm to its business and therefore failed to establish an antitrust violation under the rule of reason.

Accordingly the entry of partial summary judgment by the trial justice is affirmed. The case is remanded to the Superior Court where the remaining counts of UXB's complaint will be addressed.

---

**3.** Confidential data Rosenfeld submitted indicate that it controls approximately 3.5 percent of the relevant market. UXB, utilizing a small-er market and different figures, concludes that Rosenfeld may control up to 37 percent of the relevant market.