**COMM–TRACT CORP.**

v.

**NORTHERN TELECOM, INC.**

**Civ. A. No. 90–13088–WF.**

United States District Court,
D. Massachusetts.

July 1, 1992.

Further Memorandum and Order
Sept. 24, 1992.

John W. Bishop, Jr., Robert F. Sylvia, Hinckley Allen Snyder & Comen, Boston, Mass., for plaintiff.

Merriann Panarella, Deborah J. Hart, James C. Burling, John G. Fabiano, Hale and Dorr, Boston, Mass., Jamal John Hamood, Young Hamood, P.C., Southfield, Mich., for defendant.

MEMORANDUM AND FIRST ORDER ON NORTHERN TELECOM INC.'S MOTION TO COMPEL INTERROGATORY ANSWERS AND PRODUCTION OF DOCUMENTS OR PRECLUDE TESTIMONY CONCERNING OR IN RELIANCE ON SURVEY CONDUCTED BY D.F. BLUMBERG ASSOCIATES SURVEY (# 73)

COLLINGS, United States Magistrate Judge.

Pursuant to Rule 37, Fed.R.Civ.P., defendant Northern Telecom, Inc. ("Northern Telecom") seeks an order compelling plaintiff Comm–Tract Corp. ("Comm–Tract") to (1) produce all documents referring to or concerning a survey conducted by one of Comm–Tract's experts and relied upon by several of Comm–Tract's experts in support of opinions they intend to offer at trial; and (2) to provide all requested information concerning the survey, including the identity of survey respondents and how the respondents were selected to be included in the survey. Comm–Tract opposes Northern Telecom's motion to the extent that the defendant insists upon receiving information that would specifically identify each survey respondent and associate each particular respondent with a specific completed questionnaire.

In its Memorandum In Support, Etc. (# 74), Northern Telecom argues that absent the production of the documents and information sought, it would be unfairly hampered in its ability to analyze the survey for possible bias and to cross-examine Comm–Tract's expert witnesses with respect to the survey. Further, Northern Telecom contends that it cannot properly test or rebut the reliability of the survey without reviewing all of the underlying data. In short, given that the requested documents and information are relevant and not privileged, Northern Telecom is of the view that Rule 26, Fed.R.Civ.P., mandates their production.

Comm–Tract, on the other hand, takes the position that important public policy considerations militate against the compelled disclosure of respondent specific information. It is argued that the need to maintain and protect confidentiality, both in terms of the identity of respondents and the relation between a participant and a particular response, is vital to insure the free flow of information, to provide the foundation for unbiased survey data and to assure the reliability of survey results. Comm–Tract contends that Northern Telecom is fully able to challenge the survey, including the methodology and sampling techniques employed, without the individual respondent information its seeks. According to Comm–Tract the harm that would result from revealing the respondent specific information far outweighs any benefit that Northern Telecom would gain.

As indicated to counsel at the hearing on this motion, the Court is familiar with the use of survey evidence in trademark infringement and unfair competition cases. Treading on virgin ground in the context of anti-trust litigation, the Court inquired of Comm–Tract the purpose for which the survey evidence would be used in the instant case. While the question of whether the survey evidence is ultimately admissible into evidence is not one for this Court to decide, the purpose for which Comm–Tract

intends to use the evidence impacts upon whether the specific information as to respondents must be disclosed.

To the extent that the survey would be utilized as evidence of the respondents' state of mind, present sense impressions or subjective mental associations, Northern Telecom's need to know the identity of the participants and to tie the respondents with a specific response is *de minimus*. In such circumstances, the defendant can challenge the evidence by implicating the "circumstantial guarantees of trustworthiness," i.e., the methodology employed, the survey design, the form of questionnaires, the sampling techniques, etc. *See, e.g., Pittsburgh Press Club v. United States*, 579 F.2d 751, 757–760 (3 Cir., 1978); *Zippo Manufacturing Company v. Rogers Imports, Inc.*, 216 F.Supp. 670, 680–686 (S.D.N.Y., 1963). The same cannot be said to the extent that the survey is used as "no more than a summary and distillation of ... extrajudicial declarations offered to prove the truth of the matters asserted in those declarations ..." *Pittsburgh Press Club v. United States, supra*, 579 F.2d at 757. In that circumstance, the only way Northern Telecom could counter the evidence would be to test the specific individual responses of the survey participants. This is equally true whether the survey itself is sought to be admitted or whether an expert intends to offer such an opinion based on the survey results.

Neither party has addressed what the Court views to be the pivotal question in their memoranda. Additional briefing on this issue is required. Therefore, Comm–Tract is ORDERED to file a supplemental memorandum of law on or before the close of business on July 15, 1992. Therein, the plaintiff shall explain the purpose for which the survey evidence will be used, either in and of itself or as the basis of expert opinion or both, citing anti-trust cases supporting such a use. Northern Telecom is ORDERED to file a reply memorandum in response to Comm–Tract's supplemental memorandum on or before the close of business on July 29, 1992. Action on the motion to compel shall be PRETERMITTED pending receipt of these supplemental memoranda of law.

## FURTHER MEMORANDUM AND ORDER

In the Memorandum and First Order on Northern Telecom Inc.'s Motion To Compel (# 90), which is incorporated herein by reference, the Court ordered the plaintiff, Comm–Tract, Inc. ("Comm–Tract"), to file a supplemental memorandum of law explaining the purpose for which the subject survey evidence will be used in this antitrust litigation, together with supporting case citations. The defendant Northern Telecom, Inc. ("Northern Telecom") was granted leave to file a further reply brief. Having reviewed these supplemental submissions, the Court is now in a position to decide the question of whether Northern Telecom is entitled to receive information that would specifically identify each survey respondent and associate each particular respondent with a specific completed questionnaire.[1]

According to the plaintiff, the survey in question will be used at trial

... for the purpose of demonstrating industry and customer perception with respect to relevant markets, interchangeability and market power as a result of customer perception that the tying product in this case is necessary for the proper operation of the Northern Telecom PBX switches.

Plaintiff's Supplemental Response # 97 at p. 2.

Two of the cases cited by Comm–Tract to support its proposed use of the survey evidence do not involve antitrust claims. *See Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corporation*, 739 F.2d 604 (Fed. Cir., 1984) (a patent case); *Kohner v. Wechsler*, 477 F.2d 666 (2 Cir., 1973) (a securities case). The Supreme Court cases upon which Comm–Tract relies, while analyzing the elements of an antitrust claim, do not discuss the use of survey evidence

---

1. Although Northern Telecom's motion is broader in scope, Comm–Tract has only interposed an objection with respect to providing this particular information.

as a means of proving those elements. *See Eastman Kodak Company v. Image Technical Services, Inc.,* —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). The remaining cases cited by Comm–Tract allude to the use of survey evidence in the antitrust context, for instance, to prove damages, but offer little guidance in addressing the issue now before the Court. *See Dolphin Tours, Inc. v. Pacifico Creative Service, Inc.,* 773 F.2d 1506, 1511–1513 (9 Cir., 1985); *Military Services Realty, Inc. v. Realty Consultants of Virginia Ltd.,* 823 F.2d 829, 832 (4 Cir., 1987).

Assuming that survey evidence may appropriately be employed in antitrust litigation, the question yet remains as to the manner in which it would be used. Although Comm–Tract generally described the purpose for which the survey will be utilized, repeatedly invoking the key phrase "customer perception," the plaintiff really provides no specifics, for example, which survey responses go to prove what elements of its antitrust claims?

Appended to its supplemental filing, Northern Telecom has submitted, *inter alia,* a copy of the Blumberg study, including the survey questionnaire, and a copy of Comm–Tract's answers to expert interrogatories. (# 100, Exh. A and B) A number of the survey questions do appear to probe the respondent's perception of the market. For example, question 6 inquires "Are you aware that there are other vendors for hardware maintenance of NTI PBX switches aside from Northern Telecom and NYNEX/Meridian?" Other questions, however, appear to be specific factual inquiries. The most blatant example is question 20, "Are there any additional comments you may have about either the hardware or software service and support relating to your installed base of Northern Telecom/NYNEX–Meridian PBX systems?"

The reproduced verbatim responses to this open ended question are as follows:
0001  No, I'm happy with the service and support of Northern Telecom.

0002  The only comment, it seemed that the support staff is not very well trained.

0006  Just we haven't had any big problems just getting Northern to respond when there is a problem.

0007  People are not well-trained in equipment such as repair and installation.

0008  NTI's quality of service is terrible.

0009  Yeah, they are the most expensive.

0015  Yes, I'm very upset about their change in having to buy software by port size within system. If I want to move up 40 to 50 size I have to buy new port from them.

0024  Remote diagnostics (P) well having the background that I have I know I need someone on site but I have to call in for service that isn't always (responsive) (P) basically the service takes too long sometimes.

0026  Yes, it has made it difficult for me to deal with NTI since they changed their headquarters. If I want to put in a switch in Philadelphia I have to go through Bell Atlantic. It makes no sense to e (sic) why when I purchased NTI equipment they have to sub-contract to other vendors.

Based upon these responses, the expert, Donald Blumberg, opines that "[c]ustomers continue using Northern Telecom or its authorized distributors despite extreme dissatisfaction as elicited by customer comments by a survey of the customer base." (# 100, Exh. B at p. 36–37) Mr. Blumberg further states "[d]espite this apparent dissatisfaction, customers continue, without justification, to use Northern Telecom or its authorized distributors rather than switching to Comm–Tract." (*Id.* at p. 41)

It is clear that the answers to question 20, and the expert opinion based upon them, would be offered not to demonstrate "customer perception" but rather for the truth of the matters asserted. As noted in the prior memorandum, Northern Telecom could effectively counter such evidence at trial only by being able to test the specific individual responses of the survey participants.

To summarize, Comm–Tract's use of the survey evidence in this case appears to have a dual purpose, both to prove "customer perception" and, at least in part, to prove the truth of the matters asserted. In this circumstance, Northern Telecom is entitled to the discovery it seeks. Therefore, it is ORDERED that Northern Telecom Inc.'s Motion To Compel Interrogatory Answers and Production of Documents (# 73) be, and the same hereby is, ALLOWED.

Pursuant to Rules 26(b)(1)(ii) and 37(a)(2), Fed.R.Civ.P., the plaintiff is ORDERED to (1) produce the requested documents respecting the survey and (2) provide full and complete answers to interrogatories respecting the survey *on or before the close of business on Friday, October 9, 1992.*